THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES BIVENS (Impleaded), Defendant-Appellant.

First District (1st Division)　No. 80-1081

Opinion filed September 28, 1981.—Rehearing denied November 2, 1981.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Joel A. Stein, and J. Mark Lukanich, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Charles Bivens (defendant) was convicted of rape and deviate sexual assault. He was sentenced to two concurrent terms of 25 years. Defendant appeals.

On appeal, defendant contends the evidence was too confusing and contradictory to sustain his conviction beyond a reasonable doubt; the defense was not tendered allegedly exculpatory evidence; and the trial court made evidentiary errors which require reversal.

On July 10, 1979, the complainant was working at a snack shop on 43d Street in Chicago. At approximately 3 a.m. two of her friends, John Green and Tyron Hodges, arrived at the store to escort her home. After about 15 minutes, complainant closed the store and the three left. They saw defendant and LeRoy McCaster, a co-defendant, whose case was severed from defendant's. Complainant knew defendant prior to this occasion, and had actually lived with defendant for a period in 1977.

Defendant and McCaster approached complainant and her friends. Defendant put his arms around the complainant and asked whether Green was her boyfriend. She replied he was not. Defendant then started an altercation with Green, knocking a cigarette and a bag of food out of his hands. McCaster then put his hand in his pocket and told defendant not to worry because he (McCaster) had Green covered. Green then withdrew from the scene, presumably to get help. He returned in approximately 5 to 10 minutes but defendant, complainant and McCaster were no longer there.

The complainant testified that when Green left, defendant and McCaster each grabbed one of her arms and pulled her away. They went through an alley and walked south until they reached a school. They went through the schoolyard until they emerged at Drexel Park. Complainant testified she yelled for help from several people in the park, but no one responded. She also testified that throughout this period she pleaded to be left alone, to which defendant replied that if she did not "shut up" he would "kick her ass."

Finally, complainant was taken to a courtyard building on the west side of Drexel. She testified that defendant either ordered her to take her pants off or to take one leg out of her pants, and to get on her knees. He then ripped off her underpants and forced her to perform a deviate sexual act on him. Defendant then told McCaster he was next. McCaster also

forced complainant to perform such an act. She was then pushed down and McCaster had intercourse with her.

Complainant was then taken to another gangway where defendant again ordered her to perform a similar sexual act. She refused and defendant hit her in the jaw, "breaking her tooth." She was then forced to perform the act on both defendant and McCaster, and both men had intercourse with her. Defendant then poured some rum on complainant stating if she told the police anything, they would think she was drunk.

Defendant and McCaster then took complainant back across Drexel Park to a playground. There she was again forced to perform deviate acts on defendant and McCaster. As complainant was led down 43d Street, she noticed a parked police car. At approximately 4:50 a.m. the two men left her.

Complainant immediately boarded a bus at 43d Street and Ellis and told the driver she had been raped. The driver drove to an "L" station where he called police. They arrived shortly thereafter.

Complainant was taken to Mercy Hospital where she was interviewed and examined by Nurse Colleen Burns and Dr. Jose Balboa. Nurse Burns wrote a report which stated complainant denied vaginal contact but said she had oral sex. Dr. Balboa examined complainant for external injuries but could not detect any. He also took smears from complainant's throat and vagina. In his preliminary examination he could not detect any sperm. At the same time, Dr. Balboa created more slides from the smears and placed them in a "rape kit", which is a kit used in the collection and transportation of evidence on sexual assault. Dr. Balboa also placed in the kit a report which was signed by himself and Nurse Burns that "she [complainant] was forced to have vaginal and oral sex with two unknown males." The kit was then sealed.

Later, the slides in the kit were examined by Michael Zefeldt, a microanalyst for the Chicago Police Department. After a detailed microscopic examination, Zefeldt found the presence of sperm.

At approximately 5 a.m. Chicago Police Officer Daniel Nendza and his partner responded to a call directing them to 4155 South Lake Park. When they arrived they heard a woman scream "Charles, leave me alone." Officer Nendza ran into the building and saw defendant holding a woman in his arms. LeRoy McCaster was also at the scene. Defendant and McCaster were arrested, but neither of them were charged with any crime regarding this latter incident. However, while at the area police station both of them were identified by complainant.

## I

Defendant contends the evidence adduced at trial is insufficient to sustain a verdict of guilty beyond a reasonable doubt. Defendant urges a

lack of corroboration of complainant's story, and inconsistencies in her statements. Defendant points to the failure of Dr. Balboa to detect evidence of sperm, complainant's "broken tooth", or of injuries to her arms. Defendant also stresses the lack of physical evidence that complainant's underpants were "torn off", the fact she did not call for help at the snack shop nor when she noticed the police car parked on Ellis, and the additional fact that her friend, Green, never contacted police after complainant was abducted. Furthermore, defendant notes the bus driver did not notice either defendant or McCaster, though complainant testified she jumped on the bus immediately after being freed from their grasp. Finally, defendant points out inconsistencies between complainant's testimony and earlier statements, particularly her statement to Nurse Burns in which she denied vaginal contact, and her testimony in a preliminary hearing where she did not mention the initial deviate sexual assault.

All of the factors described above merely establish that there was some conflict of testimony and present a question as to the credibility of the complaining witness. The determination of the credibility of witnesses and the resolution of conflicting testimony are issues which are squarely within the province of the jury. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 227, 367 N.E.2d 666.) Furthermore, in *People v. Secret* (1978), 72 Ill. 2d 371, 376, 381 N.E.2d 285, the supreme court established that corroborating evidence is not required to sustain a conviction for rape, as long as "complainant's testimony is clear and convincing * * *." We have determined that "[m]inor variances in a complainant's testimony may go to the question of credibility, but will not raise the corroboration requirement where the testimony is otherwise clear and convincing." *People v. Osborn* (1977), 53 Ill. App. 3d 312, 323, 368 N.E.2d 608, *appeal denied* (1978), 71 Ill. 2d 600, *cert. denied* (1978), 439 U.S. 837, 58 L. Ed. 2d 134, 99 S. Ct. 122.

■■ In the case at bar, we find the variations in the testimony of the complaining witness to be minor, and we find her testimony was clear and convincing. Furthermore, complainant's testimony was corroborated by the testimony of John Green, the findings of microanalyst Michael Zefeldt, the arrest of defendant within very few minutes of the rape and in close vicinity, and complainant's immediate report of the rape to the bus driver and police. (See *Secret*, 72 Ill. 2d 371, 378.) From the record before us, we find more than ample evidence to support the verdict beyond any reasonable doubt.

## II

Next, defendant argues he was prejudiced because he was not tendered the report sealed in the rape kit which stated "she [complainant]

was forced to have vaginal and oral sex with two unknown males," until after defendant had rested his case. Defendant contends the failure to disclose the report, despite a valid discovery request, violated Supreme Court Rule 412 (Ill. Rev. Stat. 1979, ch. 110A, par. 412), and the principles set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392. Defendant does not argue bad faith on the part of the State. It does not appear the State had knowledge of the report until the "rape kit" was examined by the defense attorney during trial. Upon discovering the report, defendant moved for a mistrial. The motion was denied.

The pertinent portion of the rule (Ill. Rev. Stat. 1979, ch. 110A, par. 412(a)(i)) provides:

"(a) * * * [T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:

(i) * * * [M]emoranda containing substantially verbatim reports of their [prospective State's witnesses] oral statements, and a list of memoranda reporting or summarizing their oral statements. Upon written motion of defense counsel memoranda reporting or summarizing oral statements shall be examined by the court *in camera* and if found to be substantially verbatim reports of oral statements shall be disclosed to defense counsel; * * *."

In the case at bar, the defense has made no showing that the statement in question was a summarization of the oral statement of the complaining witness or that it was a "substantially verbatim" report. (See *People v. Witherspoon* (1979), 69 Ill. App. 3d 391, 398, 388 N.E.2d 1, *appeal denied* (1980), 81 Ill. 2d 587.) The rule provides for an *in camera* hearing to determine the discoverability of such statements. However, the defendant never moved the trial court to determine by whom the statement was made, and whether it was discoverable. Instead, defendant moved for a mistrial, which we believe was properly denied. (See *People v. Wilson* (1975), 32 Ill. App. 3d 842, 845, 336 N.E.2d 92.) In addressing a similar situation, the supreme court held the failure to produce a police report did not necessitate a new trial. (*People v. Durso* (1968), 40 Ill. 2d 242, 250, 239 N.E.2d 842):

"Here there is even some doubt that the police report constitutes a statement of the witness. It is not signed by her, nor specifically attributed to her, * * *. In any event, no attempt whatsoever was made during the trial to lay a foundation for its existence, in spite of the fact that [the witness] was cross-examined extensively and the defense knew that she had reported the invasion of her house to the police. We conclude that there is no evidence that the State

concealed the report from defendants and we find no error in the fact that it was not produced."

■■ Furthermore, we cannot see how defendant was substantially prejudiced by the late disclosure. Such a showing is required for a new trial to be granted. (*People v. Greer* (1980), 79 Ill. 2d 103, 120, 402 N.E.2d 203.) In the case at bar, the case against defendant was quite strong, and any possibly exculpatory effect of the statement in question certainly would have been diminished by the existence of a report prepared by Nurse Burns and signed by complainant stating, "Pt. states at 3:15 a.m. she was forced by *two known black males* to travel on foot from 43 and Berkley to 42 and Ellis—at which time both men forced her to have oral sex." (Emphasis added.)

### III

Defendant contends the State brought out evidence and made final argument which suggested that defendant committed an offense other than the one for which he was being tried. As above set out, Officer Nendza testified to the circumstances surrounding his arrest of defendant, about four blocks away from the occurrence of the crime for which he was charged, and shortly thereafter. No objection was made to this testimony by defendant during trial. A number of times counsel for defendant stated "Objection" as to collateral matters and the trial judge said "Sustained." However, no objection was made to the substance of the testimony surrounding the arrest.

In closing argument the prosecutor referred to these circumstances. An objection was made by counsel for defendant. The objection was limited to the statement that the prosecutor had allegedly misquoted the testimony of the police officer.

■■ In our opinion, these issues have not been preserved for appellate review and are accordingly waived. Only general objections were offered when the evidence was elicited and when the allegedly improper closing statement was made. "[A] general objection, if overruled, will not preserve the issue for review on appeal." (*People v. Queen* (1974), 56 Ill. 2d 560, 564, 310 N.E.2d 166.) Defendant did not raise these issues in his written motion for a new trial. " 'Where the grounds for a new trial are stated in writing,' as is the case here, 'the accused is limited on review to the errors alleged therein and all other errors are deemed to have been waived.' " *People v. Edwards* (1978), 74 Ill. 2d 1, 4, 383 N.E.2d 944, quoting *People v. Hairston* (1970), 46 Ill. 2d 348, 367, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658. See also *People v. Adkisson* (1980), 83 Ill. 2d 1, 7, 413 N.E.2d 1238, which comments upon the "salutary purpose of a firm waiver rule * * *."

■■ We do not find the error alleged here so obvious and of such a crucial nature that we should raise the issue to the level of plain error. (See *Adkisson,* 83 Ill. 2d 1, 8.) Unlike the cases cited by defendant (*e.g., People v. Miller* (1977), 55 Ill. App. 3d 421, 370 N.E.2d 1155, *appeal denied* (1978), 71 Ill. 2d 600, and *People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113), in the case at bar, the allegedly improper evidence did not actually disclose the commission of a collateral crime. At trial, defendant was able to demonstrate he was neither convicted nor even charged with a crime regarding this subsequent incident. Furthermore, the general circumstances of the arrest are admissible to show its extreme " 'proximity in time and place' " to the crime with which defendant was charged. *Watson,* 55 Ill. App. 3d 564, 568.

Even the inference of the commission of other crimes is admissible to show a proximity in time and area between the commission of the crime charged and other similar incidents. *Miller,* 55 Ill. App. 3d 421, 426.

In addition, the supreme court has held that evidence of other and independent crimes is admissible, if relevant "for any purpose other than to show propensity to commit a crime * * *." *People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.

### IV

Defendant contends reversible error resulted from introduction of hearsay evidence by the People. Officer Merriweather testified that on July 10, 1979, about 5 a.m., he went to Michael Reese Hospital and spoke to a doctor. He went to the Mercy Hospital where he spoke to another. doctor. He went to the police station where he "interviewed" defendant and McCaster. He went to Mercy Hospital where he spoke to the complainant. He then accompanied the complainant to the various places mentioned in her testimony. Defendant objected to this testimony on the ground that this was tantamount to corroboration of the statements of the complainant.

In final argument the prosecutor alluded to the fact that the police officer had met the complainant. Counsel for defendant objected to this statement on the ground it was outside the record. The trial court then admonished the jury to disregard any statement of counsel not borne out by the testimony. The jury was instructed at the end of the trial that closing arguments should be confined to the evidence; closing arguments are not evidence and argument by the attorneys not based on the evidence should be disregarded. Illinois Pattern Jury Instructions, Criminal, No. 1.03 (1968); see *People v. Olejniczak* (1979), 73 Ill. App. 3d 112, 121-22, 390 N.E.2d 1339.

We reject the argument raised by defendant attacking the testimony of Officer Merriweather as hearsay. In *People v. Sanders* (1976), 37 Ill. App. 3d 236, 239, 345 N.E.2d 757, a police officer testified as to various

things he had done including the arrest of co-defendants. The same objection regarding hearsay was raised. This court rejected the contention of defendant and held (*Sanders*, 37 Ill. App. 3d 236, 239):

> "In our opinion, none of this evidence was within the legal definition of hearsay. * * * The testimony of [the police officer] was confined strictly to his physical activities and to the bare occurrence of the conversations. At no time did he testify to the substance of any part of any conversation. His testimony as to his activities was all in court under oath and subject to cross-examination. Under these circumstances the court acted properly in denying the motion to exclude it."

Other authorities which considered similar situations and reached the same conclusion are *People v. Dunning* (1980), 88 Ill. App. 3d 706, 709-10, 410 N.E.2d 1052, and cases there cited, and *People v. Meredith* (1980), 84 Ill. App. 3d 1065, 1077-78, 405 N.E.2d 1306, and cases there cited. In reaching this result most of the cited cases depend upon *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, which is the classic case applicable to problems of hearsay testimony.

■■ In the case at bar, defendant cites *People v. Jones* (1975), 28 Ill. App. 3d 896, 329 N.E.2d 855. There, the court held the testimony of a deputy sheriff was hearsay. However, there, the testimony of the sheriff did not amount to a statement of what he did. As the *Jones* court pointed out, "the testimony was clearly offered to prove that the prosecutrix could retrace the route she and her assailant had taken and was, therefore, hearsay." (*Jones*, 28 Ill. App. 3d 896, 901.) No such factor is present in the instant case.

V

■■ As shown, Officer Merriweather testified he had "interviewed" defendant. On cross-examination of the officer, defendant was precluded from bringing out the substance of the defendant's statement. Defendant asserts this ruling was error. The scope of cross-examination is discretionary with the trial court, and its rulings will be reversed only if an abuse of discretion is shown. (*People v. Blakes* (1976), 63 Ill. 2d 354, 358, 348 N.E.2d 170.) In the instant case it would have been better practice to permit this type of cross-examination. However, upon the entire record before us we believe the trial court did not abuse its discretion, and that defendant was not prejudiced. *People v. Myers* (1980), 92 Ill. App. 3d 229, 237, 415 N.E.2d 1108.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.