THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PETER O'MALLEY, Defendant-Appellant.
First District (2nd Division)   No. 81—733

Opinion filed August 24, 1982.

Santo J. Volpe, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David L. King, and Thomas A. Rieck, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

Defendant was charged by indictment with two counts of official misconduct (Ill. Rev. Stat. 1979, ch. 38, par. 33—3(b)), and one count each of assault (Ill. Rev. Stat. 1979, ch. 38, par. 12—1(a)) and battery (Ill. Rev. Stat. 1979, ch. 38, par. 12—3(a)(2)). After a bench trial, defendant was found not guilty of official misconduct and guilty of assault and battery. He was fined $500 on the assault conviction and $1,000 on the battery conviction.

Defendant raises three issues on appeal: (1) whether he was deprived of his statutory right to a speedy trial; (2) whether he was deprived of a fair trial by the prosecutor's closing argument; and (3) whether the finding of the trial court was improper and inconsistent.

Defendant was a Cook County forest preserve ranger. On January 28, 1979, defendant's patrol car was parked, blocking a roadway used to exit Caldwell Woods Forest Preserve, while he was writing a parking ticket. Paul Ferris and Alex Sipari, attempting to exit the forest preserve in their cars, complained about the blocked roadway. A scuffle occurred, during which defendant allegedly slammed Ferris against a van several times and punched at Sipari but missed. Defendant arrested Ferris and Sipari, charging them variously with assault, resisting arrest, and leaving an unattended vehicle with its motor running. They were handcuffed, placed in the squad car, and taken to the Village of Skokie police station for booking. We find nothing in the record as to the disposition of the charges.

On March 19, 1979, after the incident received widespread publicity in a Chicago newspaper, the grand jury returned a four-count indictment against defendant charging him with two counts of official misconduct and one count each of assault and battery (indictment No. 79—1583).

The elements of official misconduct that defendant was charged with are: "A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts: *** (b) Knowingly performs an act which he knows he is forbidden by law to perform." (Ill. Rev. Stat. 1979, ch. 38, par. 33—3(b).) Defendant was charged with one count of official misconduct based on the underlying offense of assault and one count based on the underlying offense of battery.

The circuit court dismissed indictment No. 79—1583 on October 26, 1979. The basis of the dismissal was prosecutorial misconduct before the grand jury. At the time of the dismissal, 125 days had expired from the term of 160 days in which the State was required to bring defendant to trial. Ill. Rev. Stat. 1979, ch. 38, par. 103-5(b).

On October 26, 1979, the State filed a notice of appeal from the

dismissal order. On November 2, 1979, the State filed a docketing statement in the Illinois Appellate Court. In an order dated November 8, 1979, the appellate court set the following schedule for the appeal: record due January 25, 1980; appellant's brief due April 24, 1980; appellee's brief due July 9, 1980; reply brief due July 22, 1980. The State did not file anything in the appellate court subsequent to its docketing statement.

On May 20, 1980, indictment No. 80—C—3379 was returned charging defendant with the same four counts as in No. 79—1583. On May 21, 1980, the State filed a motion to dismiss the appeal in the appellate court which was granted on June 2, 1980. Defendant subsequently filed a motion to dismiss indictment No. 80—C—3379, alleging violation of his statutory right to a speedy trial. The motion was denied by the trial court.

After a bench trial, defendant was convicted of assault and battery and fined $500 and $1,000. Defendant was found not guilty of official misconduct.

I

Defendant initially contends that he was deprived of his statutory right to a speedy trial. The Illinois speedy trial statute provides that when a defendant is not in custody, he must be brought to trial within 160 days from the date he demands trial. (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(b).) At the time the first indictment against defendant was dismissed, 125 days had expired from the 160-day term. Defendant contends that the time when the State's appeal was pending in the appellate court must be counted in computing the 160 days. The following timetable aids in understanding defendant's argument:

| | |
|---|---|
| March 19, 1979 | Indictment No. 79—1583 returned. |
| April 2, 1979 | Defendant demanded trial. |
| October 26, 1979 | Indictment No. 79—1583 dismissed. (Parties agree that 125 days had expired from term.) |
| January 25, 1980 | State failed to file record in appellate court. |
| April 24, 1980 | State failed to file appellant's brief in appellate court. |
| May 20, 1980 | Indictment No. 80—C—3379 returned. |
| May 21, 1980 | State filed motion to dismiss appeal. |

Defendant contends that the appeal by the State was a sham and a hoax, prosecuted solely for the purpose of evading the speedy trial

statute. Consequently, the term should have started to run again on January 25, 1980, the date that the State purportedly abandoned its appeal by failing to file the record on appeal. Because defendant's theory is rather novel and unique, there is no case law directly on point.

The three cases relied upon by defendant are all substantially different from this case. *People v. Parker* (1978), 59 Ill. App. 3d 302, 375 N.E.2d 465, involves a subsequent indictment against a defendant *during the pendency* of the initial indictment. The subsequent indictment was for essentially the same offenses as the initial indictment. In an attempt to prevent the initial indictment from being dismissed for violation of the speedy-trial statute, the State argued that the term started over upon the subsequent indictment. Both the circuit court and appellate court rejected this argument. *People v. Griegel* (1978), 64 Ill. App. 3d 508, 381 N.E.2d 369, deals with the issue of whether the 120-day term or the 160-day term applied to the defendant. *People v. Newell* (1980), 83 Ill. App. 3d 133, 403 N.E.2d 775, *appeal denied* (1980), 81 Ill. 2d 597, involves the issue of whether the defendant was placed twice in jeopardy by being recharged after the State *nolle prossed* the initial charge.

The language of Supreme Court Rule 604(a)(4), which specifically deals with this situation, is clear and unambiguous. It provides:

> "The time during which an appeal by the State is pending is not counted for the purpose of determining whether an accused is entitled to discharge under section 103—5 ***." 85 Ill. 2d R. 604(a)(4).

A situation analogous to the present one is where the initial charge against the defendant is dismissed upon a finding of no probable cause at a preliminary hearing and the defendant is subsequently recharged with the same offense. In such a situation, the speedy-trial term does not run during the period between the finding of no probable cause and the recharging, unless the defendant can affirmatively show that the State secured the finding of no probable cause in an attempt to evade the speedy-trial requirement. *People v. Gimza* (1977), 56 Ill. App. 3d 477, 480-81, 371 N.E.2d 1135, *appeal denied* (1978), 71 Ill. 2d 604; see *People v. Toney* (1978), 58 Ill. App. 3d 364, 367-68, 374 N.E.2d 695, *appeal denied* (1978), 71 Ill. 2d 605.

The speedy-trial term only runs when charges are pending against the defendant. (*People v. Toney* (1978), 58 Ill. App. 3d 364, 367.) Supreme Court Rule 604 (a)(3) provides that a defendant shall not be held in jail or admitted to bail pending an appeal by the state unless there are compelling reasons. (85 Ill. 2d R. 604(a)(3).) "The evil in-

tended to be prevented by the speedy trial provision is wrongful incarceration rather than wrongful accusation. ***." *People v. Garcia* (1978), 65 Ill. App. 3d 472, 475, 382 N.E.2d 371, *appeal denied* (1979), 72 Ill. 2d 583.

Another analogous situation is where the grand jury initially returns a no bill against the defendant and subsequently returns a true bill. We recently held that the speedy-trial term does not run during the interim period. (*People v. Mitchell* (1981), 95 Ill. App. 3d 779, 786, 420 N.E.2d 415, *cert. denied* (1982), 455 U.S. 944, 71 L. Ed. 2d 656, 102 S. Ct. 1441.) There is a presumption that the return of a no bill is an independent action by the grand jury, free from prosecutorial manipulation. Of course, a showing may be made to the contrary. *People v. Mitchell* (1981), 95 Ill. App. 3d 779, 786.

We believe the reasoning of these cases is equally applicable to the present case. After the dismissal of the first indictment by the trial court, no charges were then pending against defendant. He was not in custody or under any other restraint. It is apparent that the State did not deliberately procure the dismissal of the first indictment to evade the speedy-trial requirement. There is nothing in the record to support defendant's allegation that the appeal by the State was a hoax.

■ Accordingly, we hold that defendant was not deprived of his statutory right to a speedy trial.

## II

■ Defendant next contends that he was deprived of a fair trial by the rebuttal closing argument of the prosecution. The State waived its initial closing argument. Defendant's brief in this court claims that 10 errors occurred in the State's rebuttal argument, which covers 11 pages of transcript in the record. Defendant did not object at trial to five of these comments, and defendant's post-trial motion simply alleged "[t]hat the closing argument of the prosecutor was prejudicial." Further, defendant waived oral argument of the post-trial motion. Under these circumstances, we must hold that defendant has waived any objection to the State's closing argument. It is plain that if no objection is made to a remark during closing argument at trial, it cannot be raised on appeal. (*People v. Roberts* (1981), 100 Ill. App. 3d 469, 476, 426 N.E.2d 1104; *People v. Buckhana* (1981), 99 Ill. App. 3d 889, 891, 425 N.E.2d 1297, *appeal denied* (1982), 88 Ill. 2d 552.) When only a general objection is made to closing argument, it must be specifically referred to in the post-trial motion to preserve the objection for appellate review. (*People v. Turk* (1981), 101 Ill. App. 3d 522, 530,

428 N.E.2d 510, *appeal denied* (1982), 88 Ill. 2d 552; *People v. Bivens* (1981), 101 Ill. App. 3d 8, 13, 427 N.E.2d 791.) Defendant does not contend that the errors complained of during closing argument rose to the level of plain error.

██ Although we hold that defendant has waived objection to closing argument, we have reviewed the prosecution's closing argument. We note that this was a bench trial. Where a jury is waived, it is presumed that the trial court will disregard all improper arguments by counsel. (*People v. Robinson* (1960), 21 Ill. 2d 30, 40, 171 N.E.2d 11, cert. denied (1961), 365 U.S. 861, 5 L. Ed. 2d 826, 82 S. Ct. 832; *People v. Mays* (1980), 81 Ill. App. 3d 1090, 1097, 401 N.E.2d 1159; *People v. Myatt* (1978), 66 Ill. App. 3d 642, 646, 384 N.E.2d 85.) There is nothing in the record to indicate that the trial court relied upon any alleged improper argument in reaching its finding. We reject defendant's contention that he was deprived of a fair trial by the prosecutor's closing argument.

## III

Defendant's final contention presents the question of inconsistent findings in a nonjury criminal trial. The trial court found defendant guilty of both assault and battery, and not guilty of two counts of official misconduct. Since the official misconduct counts were based on the underlying offenses of assault and battery, defendant argues that the finding was inconsistent.

This issue requires us to determine whether or not a trial judge, sitting as finder of fact in a bench trial, commits reversible error by making inconsistent findings with regard to multiple counts of an indictment or information. (See generally Annot., 18 A.L.R.3d 259 (1968).) We begin by defining an inconsistent verdict.

A legally inconsistent verdict has been defined as follows:

"Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist." *People v. Murray* (1975), 34 Ill. App. 3d 521, 531, 340 N.E.2d 186.

Originally in this State, legally inconsistent jury verdicts constituted reversible error. In *People v. Hairston* (1970), 46 Ill. 2d 348, 362, 263 N.E.2d 840, cert. denied (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1656, our supreme court reviewed the question of legally inconsistent verdicts. The law in Illinois today is that juries may return inconsistent verdicts in criminal cases. (*People v. Dawson*

(1975), 60 Ill. 2d 278, 280-81, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61; see also *People v. Johnson* (1980), 87 Ill. App. 3d 306, 310, 409 N.E.2d 48; *People v. Jimerson* (1979), 69 Ill. App. 3d 403, 411, 388 N.E.2d 10.) The justification for allowing inconsistent jury verdicts is to allow the jury to be " 'free to exercise its historic power of lenity.' " (*People v. Dawson* (1975), 60 Ill. 2d 278, 281.) The Illinois position is consistent with both Federal law and the majority of other jurisdictions. *Dunn v. United States* (1932), 284 U.S. 390, 393, 76 L. Ed. 356, 358-59, 52 S. Ct. 189, 190; Annot., 18 A.L.R.3d 259, 274 (1968).

No clear Illinois position has emerged with regard to legally inconsistent findings in criminal case bench trials, and conflicting positions have been taken by courts in other jurisdictions. (Annot., 18 A.L.R.3d 259, 284 (1968).) *United States v. Maybury* (2d Cir. 1960), 274 F.2d 899, held that inconsistent dispositions are not allowed in bench trials. The court reached this conclusion by examining the historical role of the jury and analyzing the reasons for which a jury is permitted to render an inconsistent verdict. The requirement of jury unanimity creates a need for compromise, and the jury should be allowed to protect against excessive zeal of prosecutors by exercising lenity. (274 F. 2d 899, 903.) According to the court, none of these justifications exist in a bench trial. The judge has no problem with unanimity and can exercise lenity when sentencing the defendant. The decision in *Maybury* does not rest on any provision in the Constitution and may have been decided solely in the exercise of the court's supervisory power. (*Harris v. Rivera* (1981), 454 U.S. 339, 342 n.7, 70 L. Ed. 2d 530, 534 n.7, 102 S. Ct. 460, 462-63 n.7.) Other Federal courts have refused to follow *Maybury*. See *United States v. West* (8th Cir. 1977), 549 F. 2d 545, 553, *cert. denied* (1977), 430 U.S. 956, 51 L. Ed. 2d 806, 97 S. Ct. 1601.

Pennsylvania's intermediate appellate court has taken the position that judges may render inconsistent verdicts. (*Commonwealth v. Harris* (1976), 239 Pa. Super. 603, 360 A.2d 728, *aff'd by equally divided court* (1979), 488 Pa. 141, 411 A.2d 494.) The court reasoned that to deny judges the power to render inconsistent verdicts would reduce the desirability of bench trials. According to the court, bench trials contribute to reduction of the caseload and a consequent saving of tax dollars. 239 Pa. Super. 603, 606, 360 A.2d 728, 729; accord, *People v. Pugh* (1971), 36 App. Div. 2d 845, 846, 321 N.Y.S.2d 504, 506, *aff'd* (1972), 29 N.Y.2d 909, 279 N.E.2d 604, 328 N.Y.S.2d 860, *cert. denied* (1972), 406 U.S. 921, 32 L. Ed. 2d 120, 92 S. Ct. 1777.

Several Illinois cases have involved this issue, but, for a variety of

reasons, no definitive conclusion has been reached in our State. *People v. Pearson* (1973), 16 Ill. App. 3d 543, 306 N.E.2d 539, reversed the judgment of the circuit court in a bench trial due to inconsistency. At the time *Pearson* was decided, however, consistent verdicts were still required of juries. Accordingly, the court found it unnecessary to consider whether a different standard applied to bench trials. 16 Ill. App. 3d 543, 547.

*In re Sanders* (1980), 81 Ill. App. 3d 843, 401 N.E.2d 1118, involved a delinquency proceeding in juvenile court, where juries are not used. (Ill. Rev. Stat. 1981, ch. 37, par. 704—8.) The minor respondent was charged with attempt armed robbery, murder, and felony murder. The felony murder was based on the underlying felony of attempt armed robbery. After an adjudicatory hearing, the trial court entered a finding of delinquency based on the felony murder count, but found in favor of the minor respondent on the murder and attempt armed robbery counts. The appellate court reversed the finding of delinquency because of the inconsistency in finding the respondent not guilty of attempt armed robbery and guilty of felony murder based on the underlying felony of attempt armed robbery. For reasons more appropriately discussed later in this opinion, we do not think that *Sanders* provides a definitive answer to the question of the propriety of inconsistent findings in bench trials.

In our examination of the cases dealing with inconsistency, we have attempted to ascertain the legal basis for the holding by some courts that inconsistent findings constitute error.[1] We believe that the vice in inconsistency is that it implies confusion on the part of the trial judge sitting as the finder of fact. Confusion suggests that the defendant was not proved guilty beyond a reasonable doubt. (*People v. Murray* (1975), 34 Ill. App. 3d 521, 532; see also *People v. Rogers* (1982), 104 Ill. App. 3d 326, 330, 432 N.E.2d 975.) Inconsistency is no longer considered a vice in jury cases because there are other explanations besides confusion for inconsistency: compromise to achieve unanimity and exercise of lenity. *People v. Dawson* (1975), 60 Ill. 2d 278, 280-81.

We believe it is time to acknowledge reality and to recognize that there is another explanation, besides confusion, for a trial judge's inconsistent finding in a criminal case. There are many instances when a trial court desires to exercise lenity in much the same way a jury

---

[1]One commentary has suggested that the root of this position is "the lawyer's natural bent for orderly thinking rather than *** precedent." Annot., 18 A.L.R.3d 259, 270 (1968).

does. In certain cases, it may be too late, or not appropriate, for the trial judge to exercise lenity in the sentencing of a defendant. The present case appears to be such a case. The trial judge found defendant guilty of two misdemeanors and not guilty of two felonies. Although the Class 3 felonies did not require a more serious sentence than the misdemeanor convictions, there are other adverse consequences of a felony conviction that the trial judge may have wished to avoid imposing on defendant.[2] See Decker, *Collateral Consequences of a Felony Conviction in Illinois*, 56 Chi.-Kent L. Rev. 731 (1980).

We are not implying our approval of the exercise of lenity by the trial judge acting as finder of fact, but are simply recognizing the existence of such a practice and determining that an inconsistent finding does not imply confusion on the part of the trial judge. If there is no confusion, there is no suggestion that defendant was not proved guilty beyond a reasonable doubt. The exercise of lenity by the trial

---

[2] On the surface, this exercise of lenity by the trial judge appears to be similar to the actions of the trial judges in *People ex rel. Daley v. Limperis* (1981), 86 Ill. 2d 459, 427 N.E.2d 1212. There, the trial judges found defendants guilty of delivery of less than 30 grams of a controlled substance, while the evidence clearly established that more than 30 grams of the controlled substance were involved. Delivery of more than 30 grams is a Class X felony, requiring a minimum sentence of 6 years in the penitentiary, while the delivery of less than 30 grams does not require a penitentiary sentence. (Ill. Rev. Stat. 1981, ch. 56½, par. 1401.) The State's Attorney sought writs of *mandamus* to compel the trial judges to vacate their findings and enter findings on the greater offenses. The supreme court refused to award the writs of *mandamus* because the requested relief would violate the double jeopardy clause. In *dicta*, the court disapproved of the practice engaged in by the trial judges, regretfully concluding that a constitutional impediment prevented review of the judgments. 86 Ill. 2d 459, 468-69.

Upon careful analysis, the present case is substantially different than *Limperis*. Initially, we note that the trial judges in *Limperis* were alleged to have deliberately avoided application of the Class X felony law, which removes most sentencing discretion from the trial judge. Those judges were alleged to have deliberately circumvented the legislative judgment that certain offenders be sentenced to the penitentiary. In contrast, in the present case, the trial judge would not have lost any sentencing discretion by finding defendant guilty of the felonies. The action of the trial judge simply prevented defendant from suffering certain collateral consequences of a felony conviction. See Decker, *Collateral Consequences of a Felony Conviction in Illinois*, 56 Chi.-Kent L. Rev. 731 (1980).

A more important distinction between this case and *Limperis* is the posture in which each case arose. *Limperis* involved objection by the prosecution to the exercise of lenity by the trial judges. This was an appropriate use of our adversary system of justice. The present case, however, involves an objection by the defendant to the exercise of lenity on his behalf by the trial judge. The defendant was in the position of seeking the exercise of lenity by the trial judge, and now objecting to the exercise of lenity on appeal. This is not an appropriate use of the adversary system.

judge in favor of the defendant should not redound to the defendant's advantage in the reviewing court.

■ Accordingly, we believe the following standard should be applied by appellate courts when reviewing inconsistent findings by a trial judge. Legal inconsistency in the finding should not, on a *per se* basis, require reversal of the conviction. Inconsistency is only one element to consider in determining the existence of proof beyond a reasonable doubt. When, as in the present case, there is a rational explanation for the inconsistent finding other than confusion, the inconsistency will not contribute to a determination that defendant was not proved guilty beyond a reasonable doubt. Trial judges can assist appellate review by explaining their findings on the record. *Cf. Harris v. Rivera* (1981), 454 U.S. 339, 343, 70 L. Ed. 2d 530, 534, 102 S. Ct. 460, 463.

The holding of the appellate court in *Sanders* is consistent with the procedure announced here. The only explanation for the inconsistent finding by the juvenile court judge that the minor respondent was guilty of felony murder based on the underlying felony of attempt armed robbery and not guilty of attempt armed robbery is confusion on the part of the judge. There can be no suggestion that the judge was exercising lenity in not finding the respondent guilty of the less serious felony. This acquittal would have no impact on sentencing since a juvenile court judge only commits a delinquent to the custody of the Department of Corrections and does not specify a term of confinement. The length of confinement to the Department of Corrections is determined solely by the Department. (Ill. Rev. Stat. 1981, ch. 37, par. 705—10.) Since the trial judge was confused, the *Sanders* court correctly reversed the finding of delinquency.

■ We therefore reject defendant's argument that his conviction must be reversed because of the inconsistent finding by the trial judge. [3] The defendant should not be allowed to take advantage on appeal of the trial judge's exercise of lenity in his favor.

The judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P. J., and HARTMAN, J., concur.

---

[3] The State contends that the finding of the trial court was not inconsistent. We specifically decline to address this contention and assume, *arguendo*, that the finding was inconsistent.