2026 IL App (1st) 240551-U

No. 1-24-0551

Order filed June 12, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | No. 23 DV 30328 |
| v. | ) ) | Honorable |
| JOHN SAWYER IV, | ) ) | Joel L. Greenblatt, Judge, presiding. |
| Defendant-Appellant. | ) | |

_____

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Oden Johnson and Justice Wilson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for violating an order of protection is affirmed where his challenge to the prosecutor's comment in closing argument is forfeited, the comment did not constitute plain error, and counsel's failure to preserve the issue for review was not ineffective assistance.

¶ 2    Following a bench trial, defendant John Sawyer IV was found guilty of violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2022)) and sentenced to one year of court supervision. He was also assessed fines and court fees totaling $739. On appeal, defendant

contends he was denied a fair trial when, during closing arguments, the prosecutor stated, without any supporting evidence, that defendant's testimony that he unknowingly included his former girlfriend in a thread of text messages was inconsistent with the functional capabilities of an iPhone. For the following reasons, we affirm.

¶ 3    At trial, the State presented stipulations that on February 24, 2023, the complainant, Kristyn Cropper, was issued an emergency order of protection against defendant, who was served with the order in court on March 17, 2023. The order of protection was extended several times and eventually consolidated into a parentage action in circuit court case number 23 D 3447. The order was in effect on November 10, 2023, the date the acts in this case occurred.

¶ 4    The order of protection was admitted into evidence. The order prohibited defendant from having any communication or contact with Cropper including written communication, telephone calls, emails, and texts. The order also prohibited defendant from having any contact or parenting time with the parties' 10-month-old son, J.S.

¶ 5    Cropper testified that she and defendant were previously in a dating relationship for about two years and he was the father of her son. At about 11:50 p.m. on November 9, 2023, Cropper was sleeping when she began receiving text messages from defendant. The messages appeared in a group thread that included Cropper, defendant, and defendant's mother.

¶ 6    The messages began with a link to a song on YouTube. The link was followed by five short individual messages stating, "No fear."; "I miss her."; "I have no fear."; "I miss her."; and "I love Kristyn. As time progresses she'll learn." The next message was another link to the song "Roll to Me" on YouTube. The link was followed by five more individual messages stating, "No fear."; "I

never fear anything. Roll to me is by far Kristyn Cropper in a nutshell."; "Punish me further…I bet you can't."; "I always win."; and "Great jam."

¶ 7    The next message was a link to the song "Your Smiling Face" on YouTube, followed by a message stating, "No fear…No shame." Defendant texted another link to the song on YouTube; a message stating, "No fear. She's my girl."; followed by a third link to the song. Defendant then texted, "If judge ahern [*sic*] doesn't like it then he and I can talk."

¶ 8    Defendant then texted a link to the song "Forever You And Me" followed by a message stating, "Kristyn will hear how she broke my heart. I don't give a f***. I'll say what I want and last I checked Derek Bradford has another thing coming if he wants it." Defendant sent three more individual messages stating, "I heard he will have animals waiting"; "Lol"; "Don't forget babe. If you want to be a scab…I can ensure misery." Cropper testified that she knew defendant's mother, and he did not commonly call his mother "babe."

¶ 9    Defendant texted another link to the song "Forever You And Me" followed by a series of individual messages stating:

"Don't be a c***. No one likes a c***."

"Maybe your dad never told you."

"I don't F*** around and I'm ready. Stay weak."

"Ask your mom if her behavior was appropriate."

"I'm pretty confident the judge will yell at me yet side with me."

"Italian pigs[.]"

"Lock me up for caring. Kristyn would have a self inflicted noose if I took [J.S.] from her for 11 months."

"I'm ready. WATCH"

"I'm pretty confident I'll be punished but I'm also pretty confident I'll have to be strong for the weak in due time. Then Kristyn will hopefully/finally get it."

"Time[.]"

"You'll all see in time who cares and counts[.]"

"Send this to judge ahern [*sic*][.]"

¶ 10   Defendant then sent a link to the song "Time" followed by a final message stating, "No guts no glory. Kristyn makes men hopeless. I am fearless." This last message was sent at 12:27 a.m. on November 10, 2023.

¶ 11   Cropper saw defendant's text messages when she awoke in the morning. She did not respond to any of defendant's messages. Cropper went to the Hoffman Estates Police Department and spoke with Officer Ortiz. (The officer's first name does not appear in the record.)

¶ 12   Cropper testified that both she and defendant had iPhones. Cropper was familiar with the phone's talk-to-text feature. The State asked Cropper if she was able to send links using the talk-to-text feature. The court sustained defense counsel's objections based on lack of foundation and Cropper's "belief" about the feature's functionality "in general." Cropper then testified that she personally could not send links to someone using the talk-to-text feature and, to share a link, she must physically type the contact's information on her phone.

¶ 13   Hoffman Estates police officer Ortiz testified that Cropper reported to him that defendant had contacted her and she was alarmed by his behavior because she had an active order of protection. Ortiz asked the Elgin Police Department to take defendant into custody. Ortiz went to the Elgin Police Department, spoke with defendant, then transported him to the Schaumburg Police

Department because the Hoffman Estates department was "out of service." After being advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), defendant acknowledged an order of protection was active. He also acknowledged being part of a group chat with his mother and Cropper. Defendant told Ortiz that he had tried to initiate a conversation with a "push-to-talk or something like that."

¶ 14    Ortiz recorded his conversation with defendant on a body-worn camera. The recording was admitted into evidence, and the State played a six-minute segment of the video in court. This court observed the video segment. Therein, after waiving his *Miranda* rights in writing, defendant acknowledges that he was aware there was an active order of protection against him and that he was not supposed to contact Cropper by any means. Defendant states that while he was washing dishes around midnight, he used the voice-to-text feature on his phone to text his mother and accidentally included Cropper in the texts. The next morning, defendant noticed he had included Cropper and deleted the messages. Defendant states that his messages included a song and that he had expressed "disgust" at the position that "these two women" had put him in over the past 10 months. He did not recall anything further from his messages because he had consumed eight beers earlier that night. Defendant texted the songs to his mother because he liked music and they used to go to concerts together. He did not recall mentioning Cropper's attorney or Judge Ahern in his texts but comments that he was "not very satisfied with these people." He explains that his message stating "If judge ahern [*sic*] doesn't like it then he and I can talk" referred to the fact that defendant was representing himself and, thus, would be speaking with the judge.

¶ 15    Ortiz further testified that he owns an iPhone and had used the talk-to-text feature. He had also sent links to contacts. Personally, Ortiz was unable to send a link using the talk-to-text feature.

To send a link to someone, Ortiz had to physically tap the share button on his phone, and then tap the contact to whom he was attempting to send the link.

¶ 16    Defendant testified that in February 2023, Cropper obtained an emergency order of protection against him that prohibited him from contacting her. Shortly before midnight on November 9, 2023, defendant was cleaning his kitchen and washing dishes when he used the voice-to-text option on his phone to text his mother. He did not request that anyone else be included in the text messages. Defendant texted his mother because he was angry and was "venting" about the parental disputes he was having with Cropper. Defendant testified that his texts to his mother were verbally abusive and he acknowledged that he called his mother a "c***." Defendant stated that he had consumed alcohol and he was "trying to be rude and brash" to his mother. He acknowledged that he referred to Cropper by name.

¶ 17    Defendant testified that in the past, prior to the order of protection, he had sent a string of text messages to both his mother and Cropper. He, therefore, believed that there was a prior text message string in his phone's memory that included both his mother and Cropper. Defendant testified that he did not intend to include Cropper in the current string of messages that he texted to his mother. Defendant did not realize Cropper had been included in the string of text messages until he awoke the following morning. He "figured" Cropper would contact the police.

¶ 18    About 3:30 p.m. on November 10, 2023, the police came to defendant's home and arrested him. He admitted to the police that the text messages came from his phone and that he was aware that there was an active order of protection. Defendant attempted to explain to the police that he did not intend to include Cropper in the text messages. He was aware that violating the order of

protection would subject him to criminal liability. Following his arrest, defendant contacted his phone carrier and asked them to "wipe" Cropper from his phone.

¶ 19    Defendant testified that he sent the music videos to his mother because the music was already playing on his phone, and he and his mother shared "a common love of music." Defendant stated that he had previously used the voice-to-text feature on his phone to send music videos.

¶ 20    On cross-examination, defendant testified that his mother had sided with Cropper regarding their parenting issues. Defendant claimed that when he called his mother "babe" in the messages, he was being condescending, like calling her "toots." Defendant stated that he was talking to his mother and referring to his grandfather when he said "Don't be a c***. No one likes a c***. Maybe your dad never told you." His message, "Ask your mom if her behavior was appropriate" referred to his grandmother. Defendant testified that he did not believe his grandparents had raised his mother well.

¶ 21    Defendant further testified that when he stated in his text message that he was confident the judge would yell at him, he meant that he believed the judge would "look down" on him due to his "erratic" behavior in his texts with his mother. Defendant's text "Italian pigs" referred to Cropper and her family. Defendant testified that he did not recall sending all the text messages and that he did not touch his phone from 11:30 p.m. until 10 a.m. the following day.

¶ 22    Defendant testified that when he told Officer Ortiz that he was referring to the "two women" who caused him pain, he was referring to his mother and Cropper. Defendant claimed that, regardless of the titles of the three songs he texted, they were not love songs and the "emotional interpretation" of the songs was not relevant. Defendant stated that, although he was

trying to be "brash and rude" to his mother, he texted her the songs because they were by "great band[s]" and defendant and his mother shared a "common bond" over music.

¶ 23 The State waived closing argument and reserved rebuttal. In closing, defense counsel argued that the State failed to prove that defendant knowingly texted Cropper. Counsel argued that everyone who uses a cell phone has sent a text message to someone they did not intend to send it to and had received a text from someone who did not intend to send it to them. Counsel discussed his own experience arguing, "I can tell you I have been included on text message chains that didn't make any sense where I did not – where I shouldn't have been included on. I have sent text messages personally including an individual on the text that I did not intend to include."

¶ 24 Counsel further argued, "when I'm looking at my phone, typing a text message, if I'm typing too fast or sending it too fast. I've made these mistakes[.]" Counsel argued that defendant's explanation was plausible, common, and more likely to occur in a case such as this where defendant was not monitoring the text messages he was sending. Counsel also pointed out that defendant's explanation had remained the same from the day he was arrested until trial. In addition, counsel argued that the manner in which defendant used Cropper's name in the text messages showed that he was talking to his mother about Cropper, not directly addressing Cropper.

¶ 25 In rebuttal, the State argued that defendant knew he was texting Cropper and his mother, and that he did so intentionally. The State argued that defendant addressed Cropper directly in several of his text messages including when he said, "Don't forget babe. If you want to be a scab…I can ensure misery[,]" and when he said "Don't be a c***. No one likes a c***." The State further argued that when defendant texted "[m]aybe your dad never told you" and "[a]sk your mom if her behavior was appropriate," he was directly addressing Cropper.

¶ 26     The State pointed out that both Cropper and Ortiz testified that they owned iPhones, that they had to physically share a link on their phones, and that they could not send links using the talk-to-text feature. The State further argued, "no matter what Mr. Sawyer wants to say, unless he has a unique version of an Iphone [*sic*] that nobody else has, I have an Iphone, your Honor. You cannot send links through talk-to text. You have to physically use your phone." In addition, the State argued that defendant's statement to Ortiz that he felt he was being punished by "these two women" showed that defendant knew he was texting both Cropper and his mother.

¶ 27     The trial court initially stated that it agreed with defense counsel that everyone has received an unwanted phone call from an unknown party or an unwanted text message. The court found, however, that, although some of the text messages were directed towards defendant's mother, the evidence established that defendant clearly intended to send the messages to both his mother and Cropper. The court stated, "[i]t stretches the bounds of credulity to believe that Mr. Sawyer intended to merely communicate those messages to his mother and his mother alone. It is clear to the Court beyond all doubt that he intended to include Ms. Cropper on the chain."

¶ 28     The court quoted several of the text messages and found that the language used belied defendant's claim that they were solely intended for his mother. The court stated that defendant's assertion that he referred to his mother as "babe" was "absurd." Accordingly, the court found defendant guilty of violating the order of protection. Immediately thereafter, the court sentenced defendant to the State's recommended term of 12 months of court supervision, which defense counsel agreed was an appropriate sentence. The court also ordered defendant to complete domestic violence counseling, undergo an alcohol and drug assessment, and pay fines and court fees totaling $739. Defendant did not file a posttrial motion.

¶ 29    On appeal, defendant contends he was denied a fair trial when, during closing arguments, the prosecutor stated, without any supporting evidence, that defendant's testimony that he unknowingly included Cropper in a thread of text messages was inconsistent with the functional capabilities of an iPhone. Specifically, defendant argues that the prosecutor improperly presented her personal experience as fact when she stated, "no matter what Mr. Sawyer wants to say, unless he has a unique version of an Iphone [*sic*] that nobody else has, I have an Iphone, your Honor. You cannot send links through talk-to text." Defendant argues that the State presented no evidence about the technical capabilities of his phone or whether it is possible to send someone a link using the talk-to-text feature of an iPhone. Defendant claims the State therefore argued facts that were not in evidence to undermine the credibility of his testimony.

¶ 30    Defendant acknowledges he forfeited this issue for appeal because he did not object to the prosecutor's comment during closing argument and did not raise the issue in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). He argues, however, that his claim is reviewable under the first prong of the plain error doctrine. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Defendant claims that the evidence at trial was closely balanced because the case rested on the credibility of his testimony that he accidentally sent the text messages to Cropper. Alternatively, defendant argues that his trial counsel rendered ineffective assistance when counsel failed to preserve the issue for appeal.

¶ 31    The State responds that defendant's issue is forfeited and cannot be reviewed as plain error because no error occurred. The State argues that the prosecutor's statement was a reasonable inference based on the testimony from Cropper and Ortiz that they could not send links using the talk-to-text feature on their iPhones. The State also argues that the statement was a fair response

provoked by defense counsel's statements in closing argument regarding his personal experience sending and receiving unintended text messages. In addition, the State argues that the evidence was not closely balanced where the trial court found that the language in the text messages belied defendant's claim that the messages were intended solely for his mother, and the prosecutor's remark had no bearing on the outcome at trial. Alternatively, the State argues that defense counsel did not render ineffective assistance because defendant was not prejudiced by counsel's failure to preserve the issue for appeal.

¶ 32     The plain error doctrine is a limited and narrow exception to the forfeiture rule that exists to protect a defendant's rights and the reputation and integrity of the judicial process. *People v. Herron*, 215 Ill. 2d 167, 177 (2005). To obtain plain error relief, a defendant must demonstrate that a clear or obvious error occurred, and either (1) that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him, or (2) that the error was so serious that it affected the fairness of his trial and challenged the integrity of the judicial process. *People v. Sebby*, 2017 IL 119445, ¶ 48. The burden of persuasion is on the defendant, and if he fails to meet his burden, his procedural default will be honored. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010).

¶ 33     The first step of plain error review is to determine whether a clear or obvious reversible error occurred. *People v. Jackson*, 2020 IL 124112, ¶ 81. "Without reversible error, there can be no plain error." *Id.* ¶ 88. Accordingly, we must first determine whether reversible error occurred when the prosecutor stated in closing argument, "no matter what Mr. Sawyer wants to say, unless he has a unique version of an Iphone [*sic*] that nobody else has, I have an Iphone, your Honor. You cannot send links through talk-to text."

¶ 34    Generally, a prosecutor is given considerable latitude in closing argument and is allowed to comment on the evidence and any fair, reasonable inference that can be drawn therefrom, even if the inference reflects negatively on the defendant. *Jackson*, 2020 IL 124112, ¶ 82. A prosecutor may not, however, misstate the facts or argue facts that are not in evidence. *People v. Cruz*, 2019 IL App (1st) 170886, ¶ 41. Comments made during closing argument must be reviewed in context and in consideration of the entire closing argument of both the State and the defense, and those invited or provoked by defense counsel's argument will not be held improper. *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 35    Our supreme court stated, "[t]he standard of review applied to a prosecutor's closing argument is similar to the standard used in deciding whether a prosecutor committed plain error." *Jackson*, 2020 IL 124112, ¶ 83. On review, reversible error will be found only where the defendant demonstrates that the challenged remark was so prejudicial that he was denied real justice or that the guilty finding resulted from the error. *Id.*

¶ 36    Here, the record reveals that reversible error did not occur. We acknowledge that, when considered in isolation, the prosecutor's remark stating, "I have an Iphone, your Honor. You cannot send links through talk-to text[,]" appears improper. The prosecutor should not have commented on her personal experience or framed her argument in a manner that suggested that it is not technically possible to send a link using the talk-to-text feature on all iPhones, in general.

¶ 37    However, when considering the closing argument in its entirety, the record shows that the challenged comment did not constitute reversible error. The prosecutor's comment was merely an isolated remark that followed her proper argument that both Cropper and Ortiz had testified that

they owned iPhones, that they had to physically share a link on their phones, and that they could not send links using the talk-to-text feature.

¶ 38　The record further shows that the prosecutor's comment was likely made in response to defense counsel's argument which included several comments about counsel's own personal experience. Counsel stated, "I can tell you I have been included on text message chains that didn't make any sense where I did not – where I shouldn't have been included on. I have sent text messages personally including an individual on the text that I did not intend to include." Counsel then argued that defendant's explanation of how he accidentally texted Cropper was "plausible" and "common place" and stated, "when I'm looking at my phone, typing a text message, if I'm typing too fast or sending it too fast. I've made these mistakes[.]" The record thus shows that defense counsel relied on his own personal experience to support the credibility of defendant's testimony.

¶ 39　Moreover, the prosecutor's comment did not constitute reversible error where defendant has failed to demonstrate that the remark was so prejudicial that he was denied real justice or that the trial court found him guilty based on the remark. *Jackson*, 2020 IL 124112, ¶ 83. The record shows that the trial court quoted several of the text messages and found that the language defendant used in the messages belied his claim that they were solely intended for his mother. There is no indication in the record that the court gave any consideration to the challenged comment in finding defendant guilty. Unless the record affirmatively shows otherwise, we presume that the trial judge in a bench trial ignored improper arguments and relied only on admissible evidence. *People v. Bowen*, 241 Ill. App. 3d 608, 621-22 (1993). Therefore, where counsel makes improper arguments or remarks, we will not reverse "unless it affirmatively appears that the court was misled or

improperly influenced by such remarks" and that the arguments or remarks resulted in a judgment contrary to the law and the evidence. *People v. Mays*, 81 Ill. App. 3d 1090, 1097 (1980); see also *People v. O'Malley*, 108 Ill. App. 3d 823, 829 (1982) (affirming where there was "nothing in the record to indicate that the trial court relied upon any alleged improper argument in reaching its finding"). Based on this record, we conclude that because there was no reversible error, there could be no plain error. *Jackson*, 2020 IL 124112, ¶ 88.

¶ 40     In reaching our conclusion, we reject defendant's alternative argument that he was denied the effective assistance of counsel when his trial counsel failed to preserve the issue for appeal. Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Veach*, 2017 IL 120649, ¶ 29. To support a claim of ineffective assistance of counsel, defendant must demonstrate that counsel's representation was deficient, and as a result, he suffered prejudice. *Strickland*, 466 U.S. at 687. Specifically, defendant must show that counsel's performance was objectively unreasonable, and that there is a reasonable probability that the outcome of the proceeding would have been different if not for counsel's error. *Veach*, 2017 IL 120649, ¶ 30. If defendant cannot prove that he suffered prejudice, this court need not determine whether counsel's performance was deficient. *People v. Givens*, 237 Ill. 2d 311, 331 (2010).

¶ 41     In this case, we have already determined that defendant was not prejudiced by the prosecutor's comment and, therefore, the challenged comment did not constitute reversible error. It therefore follows that defendant was not prejudiced by trial counsel's failure to object to the comment at trial or preserve the issue for appeal. *Jackson*, 2020 IL 124112, ¶ 91. Accordingly, we find that trial counsel did not render ineffective assistance.

¶ 42    For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 43    Affirmed.