Commonwealth *v.* Harris, Appellant.

Submitted September 8, 1975. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*John W. Packel,* Assistant Defender, and *Benjamin Lerner,* Defender, for appellant.

*Barry H. Oxenburg, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, P.J., April 22, 1976:

This is an appeal from the judgment of sentence of the Court of Common Pleas, Trial Division, Criminal Section, of Philadelphia County, by the defendant-appellant, Nathaniel Harris, after conviction in a non-jury trial of robbery.

Appellant, Nathaniel Harris, was charged with simple assault and battery and robbery.

The complaining witness, aged 72, testified that an assailant rushed up to him and said "Give me your money old man, give me your money", while grabbing his throat and necktie. The tie broke and the complaining witness fell. While on the ground he was beaten on the face by assailant. A plainclothes officer in an unmarked car saw the "scuffle". As the officer approached, the complaining witness fled. The officer identified himself to appellant and asked appellant "what was up". Appellant allegedly replied "he was punching me". The officer responded that it looked to him that it was appellant who was doing the punching. The officer asked appellant to wait while he investigated. Appellant refused. The complaining witness arrived on the scene and stated that appellant had robbed him. He positively identified appellant as his assailant.

After the trial before a judge, the Court found appellant not guilty of assault and battery and guilty of robbery.

There are two issues: First, the appellant argues that the colloquy before the jury trial waiver did not comply with *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597 (1973). This matter was neither raised at trial nor at post trial motions. Therefore it is waived. *Commonwealth v. Murray*, 233 Pa. Superior Ct. 10, 334 A.2d 678 (1975).

A more serious contention is raised by the appellant that the court sitting without a jury is without power to render an inconsistent verdict, i.e., not guilty of assault and battery but guilty of robbery. Both sides concede that juries have the power to render such verdicts.

*Commonwealth v. Carter,* 444 Pa. 405, 282 A.2d 375 (1971). The appellant argues, however, that in cases tried by a judge alone the court should not possess such power. The Commonwealth argues that judges have the same powers as juries under *Pa. R. Crim. P. 1101* established for the purpose of providing for waiver of jury trials.

The United States Court of Appeals for the Second Circuit has ruled that a judge does not possess the power to render such verdicts. *United States v. Maybury,* 274 F.2d 899 (2d Cir. 1960). This rule has not been adopted in Pennsylvania and the federal ruling was not on constitutional grounds. The rule in Pennsylvania remains that a judge does possess the power to render such verdicts. *Commonwealth v. Carter,* supra. *Commonwealth v. Reed,* 458 Pa. 8, 326 A.2d 356 (1974). To deny judges that power would be to reduce the desirability of trial by a judge alone. We have consistently held that a decision by a judge without a jury has the same efficacy as a jury verdict.

*Rule 1101* of the Pa. R. Crim. P. reads as follows:
"In all cases, the defendant may waive a jury trial with the consent of his attorney, if any, and approval by a judge of the court in which the case is pending, and elect to be tried by a judge without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record."

Non-jury trials have worked very well in our system and have contributed to the reduction of case loads and the saving of considerable tax money. We should not weaken the non-jury trial system.

Judgment affirmed.

Concurring Opinion by Hoffman, J.:

The appellant contends that it is error for a court, sitting as a trier of fact, to render an inconsistent verdict in a criminal case.

The following is the account of the criminal episode offered at trial by the complaining witness, James Hall.

Mr. Hall, seventy-two years old at the time of the incident, was walking north on 17th Street, near Chestnut Street, in Philadelphia, on September 27, 1974, when appellant attacked him. According to Hall, "[appellant] grabbed me by my throat and my tie and said, 'Give me your money old man, give me your money.'

"So I said, 'I have none,' and I tried to wrestle and get away from him but he was choking me and I guess - I don't know, I guess I lost consciousness, maybe. He choked me until the tie broke."

The witness attempted to escape his assailant by crossing the street. "And as I got across the street, then he hit me down under another car and then he was hitting me in my face and I was screaming for help and this police officer rescued me." Finally, he testified that, in fact, appellant took no money from him.

Philadelphia Police Officer Felton Morrison also testified about the attack on Hall. At about 8:45 p.m., Morrison was patrolling the Center City neighborhood when he observed two men "scuffling": "... I was going to call a radio car to come back and take care of the fight, which I thought was going on at that time.

"As I took my radio up, I heard someone yelling, 'Help, help.' So I immediately put the radio down and leaped out of the car and I went back. As I approached these two individuals, I yelled, 'What's going on here?'

"When I yelled, 'What's going on here?' one individual detached himself and ran away, which is this gentleman here [indicating the complaining witness]."

At that point, the officer approached the appellant and asked for an explanation. Appellant claimed that Hall had punched him first and that he was merely defending himself. Officer Morrison, however, testified that appellant "seemed to be doing all the striking": "As I approached, [the appellant] had raised this man up and threw him onto an automobile on the east side of 17th Street, on the hood, and he was punching him there." Appellant was trying to leave the area when Hall

returned to the scene of the incident. Hall then told the officer that appellant had tried to rob him.

Appellant was arrested and charged in separate bills of indictment (No. 1040 and No. 1041, October Term, 1974) with robbery and simple assault. Appellant was convicted of robbery, but acquitted of simple assault. On April 15, 1975, appellant was sentenced to a term of imprisonment of 3 to 10 years.

The appellant contends that the lower court rendered an impermissible verdict because acquittal of the simple assault charge negated one of the essential elements of robbery.

Our Supreme Court recently decided *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675 (1975); the Court's entire discussion of this problem, however, is an extensive quotation from *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971):

"Appellant next argues that the not-guilty verdict on the Uniform Firearms indictment is inconsistent with the guilty verdict on the murder indictment and that such inconsistency is reversible error. We do not agree. This Court, in *Commonwealth v. Carter*, 444 Pa. 405, 282 A.2d 375 (1971) stated:

"'As the Superior Court said in *Commonwealth v. Parrotto*, 189 Pa. Super. 415, 422, 150 A.2d 396, 399 (1959): "An acquittal cannot be interpreted as a specific finding in relation to some of the evidence. As in other cases of this kind, the Court looks upon this acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity."

"'But even if it were assumed that the two verdicts were logically inconsistent, such inconsistency alone could not be grounds for a new trial or for reversal. "It has long been the rule in Pennsylvania and in the federal courts that consistency in a verdict in a criminal case is not necessary." *Parrotto*, supra, at 419, 150 A.2d 396. See also, *United States v. Carbone*, 378 F.2d 420, 422 (2d Cir.

1967); *United States v. Cindrich*, 241 F.2d 54, 56-57 (3d Cir. 1957); *Mills v. Commonwealth*, 13 Pa. 633, 634-35 (1850); *Commonwealth v. Kline*, 107 Pa. Super. 594, 164 A. 124 (1933).

"'The Superior Court in the *Kline* and *Parrotto* decisions relied on the landmark case of *Dunn v. United States*, 284 U.S. 390, 52 S. Ct. 189, 76 L.Ed. 356 (1932). Writing for the Court, Mr. Justice Holmes said (at pages 393-94, 52 S. Ct. 189): "Consistency in the verdict is not necessary .... As was said in *Steckler v. United States*, 7 F.2d 59, 60 [(2d Cir. 1925) (L. HAND, J.)]: 'The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' ... That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters.'" Appellant has presented no reason for departure from the rule of the Dunn case, which has been subscribed to by our courts and the great majority of federal and state courts.' " 464 Pa. at 547, 347 A.2d at 676-677. The Court made a passing reference to the fact that the appellant was tried by a judge sitting without a jury. Nonetheless, the Court's entire discussion of the case consists solely of a citation to a case that dealt with a verdict rendered by a jury.[1]

I understand that the implication of *Strand* is that our Supreme Court has adopted the rule that a judge is

---

1. The Court did not address the issue of whether the lower court's finding was necessarily inconsistent. I can imagine any number of circumstances that would have rendered the verdicts in *Strand* consistent. In general, courts have applied a strict standard in determining inconsistency. The Second Circuit, for example, held in *United States v. Wilson*, 342 F.2d 43 (2d Cir. 1965), that a reviewing court must be satisfied that the record is devoid of any rational basis for a finding that the verdicts are consistent. See also, Annot. 18 A.L.R. 3d 259, §§7-8, citing exhaustive authority.

permitted to render an inconsistent verdict. Thus, I concur in the result of the Majority. However, if the Court in *Strand* in fact held that a judge can render an inconsistent verdict, the Court was deciding an issue of first impression in Pennsylvania on a significant point of law. The Court's opinion contains no clear statement that it intended such a result.

Because I do not believe that *Strand* represents a clear holding on that issue, I urge the Supreme Court to hold that it is error for a judge to render an inconsistent verdict.[2] This problem was addressed by an illustrious panel of the Second Circuit Court of Appeals in *United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960) (LUMBARD, C.J., HAND, FRIENDLY, JJ.)[3]. The Court

---

2. I believe that there is no question in the instant case that the verdicts were inconsistent. The lower court made the following findings of fact: "The victim, 72 years of age, testified that he was walking in center city Philadelphia about 9:00 P.M. on September 27, 1974. The defendant grabbed the victim from behind, choked him and then beat him while demanding the victim's money. A police officer in an unmarked car passed by and saw the defendant punching and kicking the [complaining witness]. Both witnesses identified the defendant." The Commonwealth's theory of the case was that appellant robbed the victim, first by threatening the victim, and then by inflicting serious bodily injury upon him. The court acquitted appellant of simple assault. The court thereby impliedly found that appellant did not "attempt [] to cause ... bodily injury" to the victim or "put [the victim] in fear of imminent serious bodily injury." See §2701 of the Crimes Code, Act of Dec. 6, 1972, P.L. 1482, No. 334, §1; 18 Pa.C.S. §2701. If appellant did not attempt to cause or did not cause such bodily injury, or threaten to do so, he could not have committed a robbery, which requires as an essential element, that the actor "inflict [] serious bodily injury upon another" or "threaten [] another with ... serious bodily injury." 18 Pa. C.S. §3701. See also, *Commonwealth v. Justice*, 230 Pa. Superior Ct. 537, 326 A.2d 564 (1974).

3. Judge FRIENDLY and Chief Judge LUMBARD voted to reverse appellant's conviction; Judge HAND dissented from that holding. Judges FRIENDLY and LUMBARD disagreed on the disposition of the case, however: "We are divided as to the consequences of this. Chief Judge LUMBARD thinks that Maybury can no longer be convicted on either count and that the indictment should therefore be dismissed; Judge

rejected the government's contention that "inconsistency in the disposition of counts in an indictment is without legal significance." Id. at 902. The Court found that such inconsistency could be justified only by reference to the nature and function of the jury: "'[In instances of inconsistency] [w]e interpret the acquittal as no more than [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity.'.... The vogue for repetitious multiple count indictments may well produce an increase in seemingly inconsistent jury verdicts, where in fact the jury is using its power to prevent the punishment from getting too far out of line with the crime." Id.

Further, the jury originally evolved as an alternative to trial by ordeal and, thus, "'[a]t first, the jury was no more regarded as "rational" than the ordeals which it replaced, and just as one did not question the judgments of God as shown by the ordeal, so the verdict of a jury was equally inscrutable. It is but slowly that the jury was rationalized and regarded as a judicial body.'" Id. at 902-03 (citing *A Concise History of the Common Law*, 125).

As a result, cases upholding such inconsistency are based on a recognition that jury verdicts are often the result of compromise. Thus, "[i]gnoring inconsistency in a jury's disposition of the counts of a criminal indictment may thus be deemed a price for securing the unanimous verdict that the Sixth Amendment requires .... and for interposing 'the voice of the country' against the possibly excessive zeal of prosecutors." Id. at 903.

None of these considerations apply to a judge sitting as the factfinder. Obviously, the requirement of unanimi-

---

HAND believes that if we reverse, which he would not do, Maybury may not be retried on the forgery count but may be on the uttering count; I think he may be retried on both. On this issue, therefore, a majority holds that Maybury may be retried for uttering, and for that only." 274 F.2d at 904.

ty does not apply to a judge. Further, the judge, unlike a jury, understands that any mitigating fact can be considered in his sentencing decision. Thus, fear of prosecutorial zeal cannot justify inconsistency. Similarly, if moved by leniency, a judge can acquit of the more serious crime and convict of the lesser crime without any ensuing inconsistency. In addition, while a jury may arrive at inconsistency through lack of learning in the law, such inexperience simply does not apply to a judge. See, Annot. 18 A.L.R. 3d 259, §6, for discussion and extensive authority.[4]

I believe that Judge FRIENDLY'S rationale is persuasive and I urge our Supreme Court to adopt the holding of *Maybury* as the law of Pennsylvania.

SPAETH, J., joins in this concurring opinion.

---

4. Thus, the problem in the instant case is distinguishable from that addressed in *Commonwealth v. Conti*, 236 Pa. Superior Ct. 488, 345 A.2d 238 (1975). In *Conti*, we held that a judge should be treated in the same manner as a jury if the judge, sitting as a trier of fact, heard inadmissible evidence that would have required a mistrial had a jury been present. We rejected the underlying rationale that a judge was able to ignore such evidence while a jury could not.