472 A.2d 1162

**COMMONWEALTH of Pennsylvania**

v.

**Marion CURRY, Appellant.**

Superior Court of Pennsylvania.

Submitted April 22, 1981.

Filed March 9, 1984.

Petition for Allowance of Appeal Denied June 5, 1984.

Mark E. Kogan, Philadelphia, for appellant.

Gaele McLaughlin Barthold, Assistant District Attorney, Philadelphia, for Com., appellee.

Before WICKERSHAM, MONTEMURO and WATKINS, JJ.

WATKINS, Judge:

This is an appeal from the order of the Court of Common Pleas, Criminal Division, of Philadelphia County, denying a motion to dismiss the granting of a mistrial. The charges in this case were burglary, robbery, rape and possession of instruments of crime. The jury returned verdicts of not guilty of burglary and robbery, but were unable to agree on rape and the possession of instrument of crime charges.

They were sent back for further discussion, but on the next day after deliberating a total of twenty hours, they sent a message to the judge that they were hopelessly deadlocked and were unable to reach a verdict on the rape and weapon charges. Judge Klein, the trial judge, found that there was manifest necessity to declare a mistrial on the remaining charges.

The defendant filed a Motion to Dismiss the remaining bills alleging that the prosecution on these charges was barred by double jeopardy. The motion was denied and this appeal followed.

We find that the trial judge properly declared a mistrial.

The alleged victim in this case, Mrs. Cheryl Freeman, testified that she was pregnant and was home alone with her two children, ages three and five, when the defendant and another male entered the house and at gunpoint ransacked it and at knifepoint brutally attacked and raped her. The defense was an alibi to the effect that at the time alleged he was at a wake.

The doctrine of collateral estoppel as decided by the federal constitutional proscription against double jeopardy "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). To resolve the merits of such a claim a court must determine in a common sense fashion what facts the jury must have found to acquit the defendant. *Commonwealth v. Steppke,* 267 Pa.Superior Ct. 442, 448–49, 406 A.2d 1123, 1126–27 (1979). If it cannot be said with certainty that a question of fact, critical to the charges now sought to be tried has been litigated in defendants favor, defendants claim must fail. *Commonwealth v. Zabala,* 274 Pa.Superior Ct. 401, 409–10, 418 A.2d 467, 471–72 (1980).

In the instant case, the trial judge applied these principles as follows:

"If the jury does believe part but not all of the complainant's testimony, there are a number of possibilities where the verdict could be rational. For example, the jury may have believed that the complainant allowed the defendant to enter, since he claimed to know her husband. Their questions and the defense argument stressed that no independent evidence was presented to confirm her testimony that the back door was broken down. Further,

only the complainant testified that property was taken, and the record was silent as to whether any property was recovered. The jury could have thought the reason that no confirming evidence was presented was not just trial strategy to limit the witnesses and time of the case (which seems apparent and can be criticized only by 20–20–hindsight), but thought that this lack of evidence created a reasonable doubt. The jury still could have believed that after Curry was in the house, perhaps by consent, he raped the complainant at knifepoint. This certainly is a possibility and a reasonable resolution of the testimony, even if it might not be the first choice as to a version of what happened by someone else reading the record."

Here the jury acquits the defendant on certain charges and is unable to reach a verdict on others. This inability makes it evident that while the jury resolved the narrow federal issues necessary to the acquittal charges in defendants favor, it has not resolved all the factors in defendants favor. *Commonwealth v. Steppke,* supra. A jury may believe all, part or none of the witness' testimony, and the court in such a case will carefully scrutinize the evidence for any possible explanation for the unified verdict. See *Commonwealth v. Jones,* 274 Pa.Superior Ct. 162, 171–72, 418 A.2d 346, 350–351 (1980).

In the instant case, it is certainly possible, if not obvious, that the jury had a reasonable doubt as to whether or not any items were actually stolen, without unanimously settling the issue of whether it was the defendant who raped Mrs. Freeman. The not guilty verdicts indicate that credibility was the concern of the jury.

As Judge Klein stated in his opinion: "The jury ... for example ... may have believed that the complainant allowed the defendant to enter since he claimed to know her husband."

The court below further stated:

"In any event, not only is a jury free to believe part of a witness' testimony, as some of the jury members here

did, but a jury is also free to come in with apparently inconsistent verdict. See *Commonwealth v. Nathaniel Harris*, 239 Pa.Super. 603, 360 A.2d 728 (1976). Collateral estoppel does not apply here, because there is no way to determine what parts of the complainant's testimony the jurors holding out for conviction on the rape and possession of an instrument of crime charges believed, and what parts they disbelieved. Those jurors necessarily rejected defendant's alibi defense, but apparently believed only part of the Commonwealth's evidence, as is their right. And defendant correctly concedes in his Motion to Dismiss that sufficiency of the evidence is not an issue."

The defendant's contention that the not-guilty verdicts determined the identity of the perpetrator is falacious as the jury could well have believed that there was no forcible entry or taking of property. Those doubts may have determined the not-guilty verdicts, but do not mean that some members of the jury were not convinced beyond a reasonable doubt that the defendant raped the complainant at knife or gun point.

In *Steppke*, supra, Judge Spaeth noted:

"This narrow reading of the verdict does not expose defendant to the various dangers that the ban against double jeopardy was intended to guard against. The Commonwealth did not bring the charges piecemeal as a harassing technique. *See Commonwealth v. Campana* [455 Pa. 622, 314 A.2d 854 (1974)], *supra*. Nor did the Commonwealth intend the prosecution to be a 'trial run', *see Ashe v. Swenson, supra;* for with no other charges in the offing, the Commonwealth would have had no recourse against appellee in the event of complete acquittal. Nor does this case suggest prosecutorial vindictiveness, as Judge Hoffman, in dissent, sensed in *Commonwealth v. Klinger*, 264 Pa.Superior Ct. 21, [398 A.2d 1036] (1979). Judge Hoffman disagreed, saying that the jury had most likely acquitted defendant of murder because it believed his alibi. *The same cannot be said here, given the jury's inability to agree.*"

In *Commonwealth v. Fredericks,* 235 Pa.Superior Ct. 78, 340 A.2d 498 (1975), it was held that the factors to be considered in granting a mistrial in cases where the jury is deadlocked are: the length of time the jury deliberated; the complexity of the issues involved; the number of times the jury came back for instructions; the demeanor of the witnesses; the attentiveness of the jury and other factors the court finds relevant.

Here the jury deliberated for the better part of three days. The first time they reported the deadlock, the court sent them back to continue deliberations. Only when they again indicated that agreement was hopeless did he find manifest necessity to declare a mistrial.

We affirm the order granting a mistrial on the ground of manifest necessity; and the Motion to Dismiss on double jeopardy grounds was properly denied by the court below.