J-S53008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TOBIAS C. CHAMBERS, | |
| Appellant | No. 118 EDA 2016 |

Appeal from the Judgment of Sentence Entered December 3, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004171-2014

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:              **FILED OCTOBER 31, 2017**

Appellant, Tobias C. Chambers, appeals from the aggregate judgment of sentence of four to eight years' incarceration, following his conviction for drug offenses.  Herein, Appellant challenges the trial court's suppression ruling, as well as the sufficiency of the evidence.  After careful review, we affirm.

The trial court summarized the facts adduced at trial as follows:

On March 1, 2014, at approximately 6:05 p.m., Officer Gary D'Alesio ("Officer D'Alesio") and his partner Officer Gary Tumolo ("Officer Tumolo") were on routine patrol in the area of 6000 Media Street in Philadelphia, Pennsylvania.  N.T.[,] 3/9/2015[,] at 10-11.  At that time, Officer D'Alesio observed a gray 2013 Toyota Camry traveling westbound on Media Street; after observing the driver of the vehicle fail to obey a stop sign, the Officers conducted a lawful traffic stop for violation of the Motor Vehicle Code.  *Id.* at 11.

After [Appellant] stopped the vehicle, the officers approached; Officer D'Alesio observed three unidentified males

inside the car, shifting around in their seats. *Id.* The rear passenger turned around and watched the officers as they approached. *Id.* Officer Tumolo approached the driver's side of the vehicle and saw [Appellant] in the driver's seat; he was accompanied by a front passenger, later identified as co-defendant Stewart, and a third individual identified as Marcell Porter, who was seated in the back. *Id.*

While Officer Tumolo spoke with [Appellant] and collected his relevant paperwork, Officer D'Alesio remained on the right side of the vehicle and observed the rear passenger. *Id.* at 12. While facing Officer D'Alesio, the rear passenger shifted from his seat and moved to the opposite side of the car. *Id.* At this point, after discovering that Porter had no identification, Officer Tumolo removed Porter from the vehicle and secured him in the back of the squad car to minimize potential risk to the officers. *Id.*

During this time, Officer D'Alesio noticed [Appellant] slowly reaching his right hand towards the center console area. *Id.* at 13. As he continued to observe [Appellant], he noticed that the molding around the gear shifter was slightly raised and looked unnatural. *Id.* At this point, Officer D'Alesio recognized that [Appellant] was trying to push the shifter molding down, but was unable to do so because there was a bag sticking out. *Id.* He immediately motioned to alert his partner, who returned to the vehicle just as Officers Ondarza and Tritz arrived at the scene to provide backup. *Id.*

With the backup officers in place, Officers D'Alesio and Tumolo removed [Appellant] and Stewart from the vehicle to conduct a pat down frisk, then placed them at the rear of the vehicle. *Id.* at 14. At this time, Officer D'Alesio also observed several small, black rubber bands spread out on the floor of the passenger side of the car. *Id.* at 14. Based on the officer's experience with narcotics, he concluded that the items were consistent with what is commonly used to package heroin. *Id.* With the men out of the vehicle, Officer D'Alesio also had an unimpeded view of the space by the gear shifter; he was able to look into the space with the bag and observed what he believed to be multiple bags of packaged heroin. *Id.*

Officers D'Alesia and Tumolo instructed [Appellant] and Stewart to place their hands behind their back and explained that they were under arrest. *Id.* at 16. Stewart complied, but

[Appellant] turned around and punched Officer Ordarza in the face in an attempt to flee. *Id.* Officer Tritz grabbed [Appellant], who responded by swinging his elbow and striking the officer in the face. *Id.* A struggle ensued between [Appellant] and the four officers, who were eventually able to handcuff and place him into custody. *Id.*

Following the officers' observations, Canine Officer Snyder and Canine Leo were summoned to the scene to conduct a search of the vehicle's exterior. *Id.* at 43. After the canine officer indicated the presence of narcotics, search and seizure warrant 180553 was executed by Detective Gilson. *Id.* at 44. Recovered from the vehicle were 13 packets of crack cocaine, 952 packets of heroin, and the black rubber bands, commonly used to wrap heroin bundles for sale. *Id.*

Trial Court Opinion (TCO), 10/13/16, at 1-3.

Following his arrest, the Commonwealth charged Appellant with possession with intent to manufacture or deliver a controlled substance, 35 Pa.C.S. § 780-113(a)(30) (PWID); conspiracy (PWID), 18 Pa.C.S. § 903; possession of a controlled substance, 35 § 780-113(a)(16); and possession of drug paraphernalia, 35 Pa.C.S. § 780-113(a)(32).[1] Appellant filed a suppression motion on March 9, 2015, targeting the seized crack cocaine, heroin, and related paraphernalia. The trial court denied the suppression motion on July 16, 2015. Appellant was then jointly tried with co-defendant Stewart in a non-jury trial the same day. The trial court convicted Appellant

_____

[1] The Commonwealth also charged Appellant with two counts each of aggravated assault and resisting arrest at Docket Nos. CP-51-CR-0004173-2014 and CP-51-CR-0004714-2014, which were consolidated with CP-51-CR-0004171-2014 for trial. Appellant was convicted of those offenses as well. However, Appellant has not appealed from the judgment of sentence in those cases.

on all counts, while his co-defendant was found not guilty of all charges he faced, including conspiracy. On December 3, 2015, the trial court sentenced Appellant to 4-8 years' incarceration for PWID, and a concurrent term of 4-8 years' incarceration for conspiracy. He was sentenced to no further penalty for the remaining counts. Appellant filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on October 14, 2016.

Appellant now presents the following questions for our review:

I.   Did the trial court err when it denied [Appellant]'s pre-trial motion to suppress physical evidence where … the arresting officers' testimony was not credible and did not establish that the officers had probable cause to search the car operated by [Appellant]?

II.  Is the evidence sufficient as a matter of law to sustain [A]ppellant's conviction for the crime of possession with intent to deliver a controlled substance where the competent evidence of record did not establish beyond a reasonable doubt that [Appellant] constructively possessed the controlled substance recovered hidden in a rental car which was rented by another person and occupied by several other people making furtive movements?

III. Is the evidence sufficient as a matter of law to sustain [A]ppellant's conviction for the crime of conspiracy where the co-defendant was acquitted of all charges by the trial court in a non-jury trial and the competent evidence of record did not establish beyond a reasonable doubt that [Appellant] agreed or acted with the aid of another to commit any crime?

Appellant's Brief at 6-7 (numbering added).

Appellant's first issue concerns the trial court's decision to deny his motion to suppress the seized contraband.

- 4 -

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. McAdoo*, 46 A.3d 781, 783-84 (Pa. Super. 2012)

(quoting *Commonwealth v. Hoppert*, 39 A.3d 358, 361–62 (Pa. Super.

2012)).

The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an "officer views [the] object from a lawful vantage point"; and (2) it is "immediately apparent" to him that the object is incriminating. *Commonwealth v. Petroll*, 558 Pa. 565, 738 A.2d 993, 999 (1999). Our Supreme Court has expressly recognized that incriminating objects "plainly viewable [in the] interior of a vehicle" are in "plain view" and, therefore, subject to seizure without a warrant. *Commonwealth v. Colon*, 777 A.2d 1097, 1103 (Pa. Super. 2001) (citing *Commonwealth v. Milyak*, 508 Pa. 2, 493 A.2d 1346, 1348 (1985)). This doctrine rests on the principle that an individual cannot have a "reasonable expectation of privacy in an object that is in plain view." *Petroll*, 738 A.2d at 999.

In determining "whether the incriminating nature of an object [is] immediately apparent to the police officer," we look to the "totality of the circumstances." *Id.* An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable

cause. ***Commonwealth v. Ellis***, 541 Pa. 285, 662 A.2d 1043, 1049 (1995).

***Commonwealth v. Ballard***, 806 A.2d 889, 891–92 (Pa. Super. 2002)

Instantly, Appellant's claim is that the trial court's factual determinations are not supported by the record. Appellant asserts that a video taken of the incident demonstrates that the police searched inside the vehicle after all three defendants had already been detained, before the canine unit arrived and, consequently, before the warrant was obtained to search the vehicle. Appellant argues that this evidence undermines the credibility of Officer D'Alesio, who had testified that he only saw the contraband in question from a neutral vantage point, *i.e.*, that the contraband was visible in plain view from outside of the vehicle. If the contraband in question was in plain view, however, the police had probable cause to search Appellant's vehicle, making the subsequent canine search and search warrant superfluous. ***Ballard, supra***.

Appellant relies on ***Commonwealth v. Griffin***, 116 A.3d 1139 (Pa. Super. 2015), wherein this Court reversed the trial court's denial of suppression on the basis that an officer's testimony alleging the lawfulness of the at-issue seizure of contraband was clearly contradicted by video evidence. The officer in ***Griffin*** testified that he had discovered contraband on the defendant via the plain feel doctrine, whereas a video of the incident "***clearly*** depict[ed] the officer repeatedly manipulating [the] appellant's pocket." ***Id.*** at 1143 (emphasis added). In light of that evidence, we stated, "this is one of those rare cases where a dash cam video, which was

- 6 -

made a part of the certified record, can contradict a trial court's factual finding often based on its credibility determinations." *Id.*

In this case, the trial court rejected Appellant's claim, reasoning:

At the suppression hearing, Officer D'Alesio's testimony focused on 1) the [Appellant]'s suspicious and evasive conduct; 2) the vantage point from which he observed the contraband in plain view; and 3) the events that occurred between the initial traffic stop and the eventual search of [Appellant]'s vehicle. In response to the officer's testimony, the Defense sought to introduce a video to impeach Officer D'Alesio's credibility. Defense counsel argued that the footage demonstrated inconsistencies in the officer's recounting of the incident, suggesting an overall lack of credibility. However, after admitting the video into evidence and hearing arguments on the matter, the Trial Court rejected the [Appellant]'s contentions as meritless, concluding that the footage was consistent with Officer D'Alesio's testimony and that it contained no basis for which his credibility could be questioned. Based on those factors, the [c]ourt properly denied [Appellant]'s suppression motion and allowed the contents of the search to be properly admitted into evidence.

TCO at 6.

We agree with Appellant to the extent that the video in question does depict that at least one officer was physically inside the vehicle, searching with a flashlight, for at least a minute, and that another officer joined him inside the vehicle for 10-20 seconds. However, we disagree that this evidence so clearly contradicts Officer D'Alesio's testimony – that he initially observed the contraband in plain view – to the extent that we would be compelled to reject the trial court's credibility determination as we did in *Griffin*.

Appellant's theory is that there was no need to rummage through the vehicle after the plain-view observation, and before the arrival of the canine unit, unless Officer D'Alesio had not actually seen any contraband in plain view from a neutral vantage point. However, the video evidence here does not *clearly* contradict Officer D'Alesio's testimony merely because *it could be* consistent with Appellant's theory. The video does not depict the initial plain-view observation, but events which occurred later. Consequently, the video only provides an inference that Appellant's theory is true, not direct proof that Officer D'Alesio lied.

Moreover, Officer D'Alesio testified that he had conducted a sweep of the vehicle for weapons following the removal of Appellant and the other passengers in the vehicle. N.T., 3/9/15, at 29-30; **see also Michigan v. Long**, 463 U.S. 1032, 1049 (1983) (holding "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons").[2] The Commonwealth argues that the video actually corroborates Officer D'Alesio's testimony in this regard.

---

[2] Appellant does not challenge the officers' protective sweep of the vehicle.

Commonwealth's Brief at 16-17. Whether it does or not, we can conclude that the video does not clearly or irrefutably contradict the veracity of Officer D'Alesio's testimony. In **Griffin**, by contrast, the video specifically depicted the act which rendered the search illegal, not merely indirect evidence which tended to support that the prohibited act had occurred. Consequently, we are compelled to reject Appellant's suppression claim.

Next, Appellant argues that the evidence was insufficient to support his conviction for PWID.

Our standard of review of sufficiency claims is well-settled:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

**Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted).

Appellant alleges the evidence was insufficient in this case to support his PWID conviction because the Commonwealth ostensibly failed to establish that he had constructive possession of the seized contraband.

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to

exercise that control. ***Commonwealth v. Valette***, 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession; two actors may have joint control and equal access and thus both may constructively possess the contraband. ***Commonwealth v. Mudrick***, 510 Pa. 305, 507 A.2d 1212 (1986). As with any other element of a crime, constructive possession may be proven by circumstantial evidence. ***Commonwealth v. Macolino***, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from examination of the totality of the circumstances. ***Commonwealth v. Thompson***, 286 Pa. Super. 31, 428 A.2d 223 (1981). The fact that the contraband is located in an area usually accessible only to the defendant may lead to an inference that he placed it there or knew of its presence. ***Id.***

***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa. Super. 1996).

Appellant specifically contends that the Commonwealth failed to establish constructive possession because: 1) the vehicle driven by Appellant was a rental, and had not been rented by him or any of the other passengers; and 2) because the contraband was "recovered in an area accessible to all three occupants of the rental car." Appellant's Brief at 27.

The trial court found, however, that:

First, when police initially approached the vehicle, [Appellant] and the two passengers were seen making "fervent movements," which put the officers on high alert for potential criminal activity. [Appellant] was also observed operating the vehicle from which the contraband was seized. Although he was not the registered lessee, trial testimony established that his mother (the lessee) gave him express consent to drive the rental vehicle on the date in question. Later, and just moments before his arrest, Defendant tried to … flee the scene, resorting to a physical assault on two different officers during his attempt. Lastly, and perhaps most significant, [Appellant] was observed attempting to conceal the heroin later found in the center console area of the vehicle, demonstrating both his awareness of the situation and his consciousness of guilt. These circumstances, coupled with the close proximity of the

- 10 -

contraband to [Appellant], creates a clear inference of possession.

When viewed in their totality, the facts and circumstances support the finding that [A]ppellant was in constructive possession of the contraband.

TCO at 8.

We agree with the trial court. Appellant's argument simply disregards the fact that he was observed attempting to conceal the baggie located under the molding of the gear shift, a critical factor because it demonstrates both Appellant's power and intent to control the contraband in question. Moreover, it is now axiomatic that one may constructively possess items which are simultaneously accessible others. *See Mudrick*, *supra*. Finally, Appellant's attempted flight is another factor that supported the inference that he was in possession of the contraband. "When a person commits a crime, knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." *Commonwealth v. Collins*, 269 A.2d 882, 884 (Pa. 1970) (citation and quotation marks omitted). Accordingly, the totality of circumstances in this case was sufficient to demonstrate Appellant's constructive possession of the contraband and, therefore, we conclude that Appellant's second issue lacks merit.

In Appellant's final issue, he contends the evidence was insufficient to convict him of conspiracy (to commit PWID), because his co-defendant was acquitted of all charges, including a similar charge of conspiracy.

- 11 -

"To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Rios*, 546 Pa. 271, 283, 684 A.2d 1025, 1030 (1996), cert. denied, 520 U.S. 1231, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997), citing 18 Pa.C.S.A. § 903. "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Johnson*, 719 A.2d 778, 784 (Pa. Super. 1998) (*en banc*), *appeal denied*, 559 Pa. 689, 739 A.2d 1056 (1999).

Proof of a conspiracy is almost always extracted from circumstantial evidence. *Commonwealth v. Swerdlow*, 431 Pa. Super. 453, 636 A.2d 1173, 1176 (1994). The Commonwealth may present a "web of evidence" linking the defendant to the conspiracy beyond a reasonable doubt. *Johnson*, 719 A.2d at 785. The evidence must, however, "rise above mere suspicion or possibility of guilty collusion." *Swerdlow*, 636 A.2d at 1177 (citation omitted). Mere association, presence at the scene, or knowledge of the crime is insufficient; the Commonwealth must prove that the defendant "became an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." *Id.* (citation omitted).

*Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (footnote omitted).

Here, Appellant acknowledges that the law does not typically require consistent verdicts among alleged co-conspirators with respect to a conspiracy conviction, especially when conspirators are tried separately.

This Court has held that "consistency in verdicts in criminal cases is not necessary." *Commonwealth v. Swann*, 431 Pa. Super. 125, 635 A.2d 1103, 1104 (1994). "It is well-settled that juries may render inconsistent verdicts. Pursuant to Pa.R.Crim.P. 1101[,] … judges have the same powers as juries when a jury trial is waived. Accordingly, a judge, in a non-jury trial, has the power to render inconsistent verdicts." *Commonwealth v. Caine*, 453 Pa. Super. 235, 683 A.2d 890, 893 (1996) (citing

*Commonwealth v. Harris*, 239 Pa. Super. 603, 360 A.2d 728 (1976)). As such, "this Court will not disturb a guilty verdict on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict." *Commonwealth v. Miller*, 441 Pa. Super. 320, 657 A.2d 946, 948 (1995).

*Commonwealth v. Coon*, 695 A.2d 794, 799 (Pa. Super. 1997), *abrogated on different grounds by* *Commonwealth v. Fedorek*, 946 A.2d 93, 101 (Pa. 2008).

Nevertheless, Appellant claims that the circumstances of this case are unique because the only other charged co-conspirator in this case, Stewart, was acquitted of conspiracy at the same joint trial. However, our Supreme Court rejected a nearly identical claim in *Commonwealth v. Campbell*, 651 A.2d 1096 (Pa. 1994). In *Campbell*, the defendant argued,

that consistent verdicts are required in a joint trial for conspiracy. Thus, the reasonable doubt that the jury had as to the identity of the co-conspirator, as reflected by its acquittal of 4Briston[, 12eryuiopCampbell's co-defendant and alleged co-conpirator], invalidates the verdict finding [Campbell] guilty of conspiracy. [Campbell] relies on the fact that the information did not charge him with conspiring with any person (known or unknown), but that it solely charged him with conspiring with Briston. He asserts that the court accordingly erred in charging the jury that it could find one defendant guilty of conspiracy without also finding the sole other co-conspirator guilty.

*Id.* at 1098.

In *Campbell*, the defendant was specifically charged with conspiring with his jointly-tried co-defendant, whereas here, Appellant was not charged with conspiring with a specific person, much less his co-defendant at trial, Stewart. Thus, Appellant's argument is an even weaker inconsistent verdict claim than was presented in *Campbell*.

Judgement of sentence ***affirmed***.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/31/2017