J-S02006-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRAULIO LEBRON | : | |
| | : | |
| Appellant | : | No. 97 EDA 2017 |

Appeal from the Judgment of Sentence December 16, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008590-2015

BEFORE: BOWES, J., NICHOLS, J., and RANSOM, J.*

MEMORANDUM BY BOWES, J.: **FILED JUNE 27, 2018**

Braulio Lebron appeals from the judgment of sentence of ten to twenty years incarceration imposed following his non-jury trial convictions for *inter alia*, aggravated assault with a deadly weapon and burglary. We affirm.

The trial court set forth the facts underlying these convictions in its Pa.R.A.P. 1925(a) opinion, which we adopt herein:

> On August 7, 2015, at about 8:12 p.m., Mr. Robert Hampton entered his residence[.] As he did so, Appellant, who lived a ☺couple of houses away, was standing to the side of Mr. Hampton's residence. Appellant followed Mr. Hampton inside his ☺residence, called him a rapist, and then punched him in the face. Appellant then picked up a stick that was in Mr. Hampton's living-room and struck Mr. Hampton with the stick, which had nails protruding out of it, about three times. During the assault, Appellant also bit Mr. Hampton. Mr. Hampton did not give Appellant permission to enter his residence.
>
> A second person entered Mr. Hampton's residence when he and Appellant entered. The other male, who[m] Mr. Hampton knew

_____

* Retired Senior Judge Assigned to the Superior Court.

by the name Chris, ran from the residence after hitting Mr. Hampton in the face.

Mr. Hampton fought back against Appellant's assault. In doing so, Appellant pulled him to the ground and kicked Mr. Hampton in the ribs three or four times. At or about that time, a friend of Mr. Hampton's named Megan Ross, who was present in the residence when the incident began, tried to break up the fight. It ended when Appellant fled the residence.

Shortly thereafter, the police arrived and Mr. Hampton pointed out and identified Appellant, who was sitting on the steps of his residence. Mr. Hampton went to a nearby hospital, was admitted and spent seven days recuperating from the injuries suffered during the attack, which included broken ribs and a collapsed lung. Appellant was arrested and charged.

Trial Court Opinion, 4/25/17, at 2-3.

The trial court sentenced Appellant to a mandatory sentence of ten to twenty years incarceration at the burglary conviction, due to Appellant's prior conviction for a crime of violence. ***See*** 42 Pa.C.S. § 9714(a)(1). Appellant filed post-sentence motions and a timely notice of appeal following their denial, and complied with the order to file a concise statement of matters complained of on appeal. The trial court penned an opinion in response, and the matter is ready for review of Appellant's two claims:

I.  Is the evidence sufficient as a matter of law to sustain [Appellant]'s conviction for the crime of aggravated assault . . . where the evidence of record does not establish that the item allegedly used by defendant; (i) caused bodily injury, and/or, (ii) is a "deadly weapon" as that term is defined in 18 Pa.C.S.A. § 2301?

II. Should the mandatory minimum sentence imposed by the trial court with respect to the charge of burglary under 42 Pa.C.S.A. § 9714 be vacated, and this matter remanded

> for a new sentencing hearing, due to the fact that § 9714 is unconstitutional as currently drafted?

Appellant's brief at 5.

Appellant's first claim challenges the sufficiency of the evidence supporting the verdict of the crime of aggravated assault with a deadly weapon. Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa.Super. 2014) (citation omitted).

The statutory language states that a person is guilty of aggravated assault with a deadly weapon if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon[.]" 18 Pa.C.S. § 2702(a)(4). "Deadly weapon" is defined as:

> Any firearm, whether loaded or unloaded, or any device designed as a weapon and capable of producing death or serious bodily injury, or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury.

18 Pa.C.S. § 2301.

Appellant's argument is twofold. First, he notes that the trial court acquitted him of the separate charge of aggravated assault under § 2702(a)(1), which required proof that Appellant attempted to cause serious bodily injury or caused such injury intentionally, knowingly, or recklessly. According to Appellant, that finding definitively establishes for purposes of our review that he neither attempted to cause nor caused serious bodily injury for purposes of aggravated assault with a deadly weapon under § 2702(a)(4).

In turn, Appellant emphasizes the following language of the deadly weapon definition: "or any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury." Appellant asserts that the acquittal "constrains this reviewing court to find that [Appellant] did not use, attempt to use, or intend to use, the stick in a manner that was calculated or likely to produce serious bodily injury." Appellant's brief at 16-17.

Before examining the particulars of Appellant's argument, we first note that § 2702 defines deadly weapon in three discrete ways. The first definition is: "Any firearm, whether loaded or unloaded[.]" Thus, a firearm

- 4 -

qualifies as a deadly weapon *per se*, regardless of how the firearm was used. Obviously, the stick does not fall under this definition. Therefore, the Commonwealth was required to prove that the stick fell under one of the remaining two definitions.

The second definition reads: "any device designed as a weapon and capable of producing death or serious bodily injury." Finally, the third definition is: "any other device or instrumentality which, in the manner in which it is used or intended to be used, is calculated or likely to produce death or serious bodily injury."

Thus, for these two definitions, the first question is whether the weapon was "designed as a weapon" **and** is "capable of producing death or serious bodily injury." If so, like a firearm, the weapon qualifies as a deadly weapon *per se* without analyzing its actual or intended use. If not, the weapon may fall under the generic "any other device or instrumentality" description. That definition requires proof that "the manner in which it is used or intended to be used is calculated or likely to produce death or serious bodily injury."

In ***Commonwealth v. Blake***, 605 A.2d 427 (Pa.Super. 1992), we examined the § 2301 language to determine if a knife qualified as a deadly

weapon for purposes of the deadly weapon enhancement.[1]  Therein, Blake, while committing a burglary, encountered the homeowners.  During the ensuing struggle, the victim was stabbed in the thigh by an open pocket knife, which was in Blake's pocket.  That knife had been used to cut through a screen door to gain access to the home; however, there was no evidence that Blake wielded the knife as a weapon, nor did the record contain a description of the knife.  We stated:

> Our first inquiry is to determine whether the pocket knife was designed as a weapon. If the pocket knife is designed as a weapon, then the mere possession of the knife during the crime is sufficient to apply the deadly weapon enhancement. The word designed is defined as "contrived or taken to be employed for a particular purpose." Blacks Law Dictionary 533 (4th ed. 1968). Since there is no evidence of record that the pocket knife was extraordinary in any way, we find that there is insufficient evidence to find that it was designed as a weapon.[fn]  1 Pa.C.S.A. § 1921(b) ("When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). To hold otherwise would mandate the application of the weapon enhancement for the commission of any crime while the perpetrator was in possession of nearly any instrument capable of producing serious bodily injury. This result permits an unreasonable interpretation of the phrase, *designed as a weapon.* **Commonwealth v. Gatto**, 236

---

[1] At the time, the deadly weapon enhancement statute referred to 18 Pa.C.S. § 2301 for definition of that term.  **See Commonwealth v. Blake**, 605 A.2d 427, 428 (Pa.Super. 1992) ("When the court determines that the defendant . . . possessed a deadly weapon, as defined in 18 Pa.C.S.A. § 2301 . . .") (quoting former 204 Pa.Code § 303.4(a)).  The definition of deadly weapon for the enhancement was later modified.  **See Commonwealth v. Brougher**, 978 A.2d 373, 379 (Pa.Super. 2009) ("[T]he deadly weapons enhancement has been modified, and now defines deadly weapon differently than section 2301[.]").

Pa.Super. 92, 344 A.2d 566 (1975) (all statutory law must be given a reasonable interpretation).

[fn] We do not hold that a pocket knife can never be considered to be designed as a weapon under all circumstances. However, in the present case, the prosecution does not provide a description of the size and shape of the knife or blade to enable the court to make a determination. *See* Annot. 100 A.L.R.3d 287 (discussing whether a pocket knife is a deadly weapon).

*Id*. at 428 (emphasis in original).

Arguably, there was sufficient evidence to find that the stick qualified under the "designed as a weapon" possibility. We think that a stick with nails protruding from it is clearly capable of producing death or serious bodily injury. Moreover, the stick appears to have been designed as a weapon. Unlike a pocket knife, which has obvious utility for a "particular purpose," *id*., beyond weaponry, there is no readily discernible use for the stick except as an instrument of violence. In any event, we find that the evidence suffices to warrant a finding that "the manner in which [the stick] [was] used or intended to be used, [was] calculated or likely to produce death or serious bodily injury." 18 Pa.C.S. § 2301.

Our standard of review asks whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. We find that standard met, as the evidence establishes that Appellant initially attacked Mr. Hampton by punching him in the face, then kicking him in the ribs after Mr. Hampton fell to the ground. Appellant then elected to continue the attack by picking up the stick and striking Mr.

Hampton three times. The fact-finder could determine that Appellant used the stick in a manner that was calculated or likely to produce serious bodily injury. *Blake*, *supra* at 428 ("While there is no requirement that the victim actually be in immediate danger of serious injury, the device or instrumentality must be used in a manner that could cause serious bodily injury.").

In response, Appellant emphasizes that the trial court acquitted him of the additional charge of aggravated assault under 18 Pa.C.S. § 2702(a)(1). That crime required proof that Appellant "attempt[ed] to cause serious bodily injury to another" or caused such injury intentionally, knowingly, or recklessly. Appellant submits that the finding of not guilty means, in the language of § 2301, that his employment of the stick was not calculated or likely to produce serious bodily injury. Accordingly, he is not guilty of aggravated assault with a deadly weapon under § 2702(a)(4).

We reject Appellant's attempt to attach significance to the acquittal. As our Supreme Court has observed, inconsistent verdicts are permissible. *Commonwealth v. Moore*, 103 A.3d 1240, 1242 n.3 (Pa. 2014). In *Moore*, our High Court reiterated that "Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt." *Id*. at 1246. *Moore* references jury acquittals; however, our precedents

apply the same rule to bench trials. *See Commonwealth v. Yachymiak*, 505 A.2d 1024, 1026 (Pa.Super. 1986) (citing *Commonwealth v. Harris*, 360 A.2d 728 (Pa.Super. 1976)).[2]  Therefore, to the extent that the trial court's acquittal of aggravated assault at 18 Pa.C.S. § 2702(a)(1) is inconsistent with its verdict at the separate charge of aggravated assault with a deadly weapon at § 2702(a)(4), we agree with the Commonwealth that the inconsistency does not preclude affirmance.

Additionally, we note that the verdicts are not necessarily inconsistent. First, the trial court could have determined that the weapon qualified under

_____

[2] *Harris* rejected the view expressed in *United States v. Maybury*, 274 F.2d 899 (2d Cir. 1960), which criticized extending the rationale for accepting inconsistent verdicts in jury trials to non-jury trials.  In *Commonwealth v. Gonzalez*, 892 N.E. 2d 255 (Ma. 2008), the Supreme Court of Massachusetts cited and discussed the differing approaches to this issue, and highlighted that "A common concern expressed by courts adopting the *Maybury* rule is the fear that inconsistent findings on separate charges by a judge might represent confusion or mistake on the part of the judge, and thus call into question the soundness of the guilty finding."  *Id*. at 152-53.

At any rate, the wisdom of accepting or rejecting *Maybury* has been viewed as an exercise of supervisory powers over the administration of criminal justice.  *See Harris v. Rivera*, 454 U.S. 339, 344-45 (1981) ("[T]he Court of Appeals erred when it directed the state trial judge to provide an explanation of the apparent inconsistency . . . without first determining whether an inexplicably inconsistent verdict would be unconstitutional.") (footnotes omitted).  Thus, the ultimate question of whether our courts should tolerate inconsistent verdicts is reserved to our Supreme Court.

the "designed as a weapon" standard examined by **Blake**, **supra**.[3]  Second, the crime of aggravated assault under § 2702(a)(1) required proof that Appellant specifically attempted to cause serious bodily injury, or, caused such actual injury, *inter alia*, intentionally.  While it would seem that Mr. Hampton suffered serious bodily injury, we note that Appellant argued to the trial court in a motion for judgment of acquittal that Mr. Hampton had a preexisting medical condition, and that the Commonwealth failed to establish causation.  "There is no proof that [the attack] actually caused what happened to Mr. Hampton, especially when the medics transported him and noted that everything with his breathing sounded clear.  The Commonwealth has some burden of showing a causal connection, especially when there is a preexisting medical condition."  N.T., 10/6/16, at 57.  Thus, the trial court could have simply accepted Appellant's argument and determined that he did not specifically intend to inflict serious bodily injury, nor actually caused such injury.

_____

[3] We note that the trial court's opinion is unclear on this point, as the writing refers to precedents interpreting the definition of deadly weapon for purposes of the sentencing enhancement as currently enacted.  That statute supplies a separate definition of the term "deadly weapon" that is met by a lesser degree of "use."  **See** 204 Pa.Code § 303.10(a)(2)(iii) (an offender has used a deadly weapon where the weapon was employed "in a way that threatened or injured another individual").

Appellant's remaining claim concerns the mandatory minimum sentence of ten to twenty years incarceration, imposed at the burglary charge. That statute reads, in pertinent part:

> **(a) Mandatory sentence.--**
>
> (1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. . . .
>
> . . . .
>
> **(d) Proof at sentencing.--**Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section. Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated.
>
> . . . .

42 Pa.C.S. § 9714.

Appellant conceded that he had previously been convicted of a crime of violence, and likewise did not dispute that the conviction for burglary qualified as a crime of violence. 42 Pa.C.S. § 9714(g) (defining crime of violence as, *inter alia*, burglary as defined in 18 Pa.C.S. § 3502(a)(1))*.* Appellant argues, however, that the statute is unconstitutional under *Alleyne v. United States*, 570 U.S. 99 (2013), which held that any fact that increases the penalty for a crime is considered an element of the crime, and must be found beyond a reasonable doubt by the factfinder. The existence of a prior conviction, however, has been understood as an exception. In *Commonwealth v. Bragg*, 133 A.3d 328 (Pa.Super. 2016), we stated:

> [T]he Supreme Court has recognized a narrow exception to this rule for prior convictions. [*Alleyne*, *supra* at 111 n. 1] (citing *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)). In *Commonwealth v. Reid*, 117 A.3d 777, 785 (Pa.Super.2015), this Court specifically found that Section 9714 is not rendered unconstitutional under *Alleyne* as it provides for mandatory minimum sentences based on prior convictions.

*Id*. at 332–33. On August 22, 2017, our Supreme Court affirmed our order. *Commonwealth v. Bragg*, 169 A.3d 1024 (Pa. 2017).[4] *See also Commonwealth v. Resto*, 179 A.3d 18, 21 (Pa. 2018) (OAJC) ("This case

---

[4] Appellant filed his brief one week after our Supreme Court affirmed *Bragg*, and his brief acknowledges our decision in *Bragg*.

does not concern *previous* convictions considered as aggravation at sentencing. Notably, under prevailing federal jurisprudence, such prior convictions are not treated as a type of fact implicating **Alleyne**.) (citation omitted). Therefore, we reject Appellant's challenge to his sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/18